AMERICAN NATIONAL BANK OF AUSTIN, TEXAS, V. P. B. CRUGER ET AL.

No. 621.—Decided February 7, 1898.

**Fraudulent Representations—Agency—Illegal Contract.**

Defendant was induced to sign a note to a bank as surety for her nephew, its employe, on representations by H. that the nephew was in default in that amount, and that the note was only to be used to show as an asset to the bank examiner, and would be discharged by sale of the homestead of the employe's mother; when, in fact, the amount of the defalcation was in double that sum, and such homestead had already been sold in settlement of one-half of it. Held:

(1) If H., in fact, acted on behalf of the employe in obtaining the note, its acceptance and attempted enforcement would not, as matter of law, make the bank chargeable with his fraud nor avoid the note therefor. (Pp. 451, 452.)

(2) But if H. was agent for the bank in obtaining the note, the latter was bound and the note avoided by his representations, though unauthorized and unknown to it. (Pp. 451, 452.)

(3) If the bank was chargeable with the representations, as being those of its agents, the defendant was not precluded from making her defense by the fact that it disclosed an illegal contract. (P. 453.)

QUESTIONS CERTIFIED from Court of Civil Appeals for Third District, in an appeal from McLennan County.

*Eugene Williams*, for appellant.

*Boynton & Boynton*, for appellee.—The statement made by the Court of Civil Appeals, and the facts found by said court, and also found by the jury in the trial court, show that Mr. Hunter and Miss Lottie Cruger were the agents of appellant in procuring the signature of Miss Fannie Cruger to the note in question. But if this were not so, the appellant, by accepting the note and coming into the court as plaintiff suing on the same, adopts the means by which it was procured, and the parties so securing it for its benefit thereby became appellant's agents, and the acts by which it was procured—those that are detrimental as well as those that are for its benefits—become its acts by election and ratification. Texas, etc., Ass'n v. Dublin C. & M. Co., 38 S. W. Rep., 404; Henderson v. Railway, 17 Texas, 560; Meyer v. Smith, 21 S. W. Rep., 995; Thompson's Law of Corporations, sec. 6323; Bishop, Contracts, sec. 1114; Crump v. Mining Co., 7 Grat., 352; Johnson Harv. Co. v. Miller, 72 Mich., 265; Beidman v. Goodell, 56 Iowa, 592.

Where an unauthorized party, even a stranger, acts in procuring a contract for another and the beneficiary in such contract so secured brings suit upon the same, the party with whom the contract was made may set up as a defense any misrepresentation or fraud of the person who procured the contract. 1 Am. & Eng. Encycl. Law (2nd Ed.), 1210; Clark v. Reeder, 40 Fed. Rep., 513; Crump v. Mining Co., 7 Grat., 352; Eadie, Gifford & Co. v. Ashbaugh, 44 Iowa, 519.

A note executed to be used solely for the purpose of deceiving a public officer or for the purpose of suppressing and concealing evidence, is void as between the parties, such contract being against public policy. Wel-

born v. Norwood, 20 S. W. Rep., 1129; Buck v. National Bank, 27 Mich., 293; Roll v. Raguet, 4 Ohio, 400; Bank v. Robinson, 24 Me., 274; Greenhood, Public Policy, 152–154; Bank v. Hewett, 50 Me., 267.

If any part of the consideration for the execution of a promissory note is illegal or against public policy, then the whole note is void. Wegner Bros. v. Biering & Co., 65 Texas, 506; Seeligson v. Lewis, 65 Texas, 215; Edwards County v. Jennings, 35 S. W. Rep., 1053; Reed v. Brewer, 37 S. W. Rep., 419; Buck v. National Bank, 27 Mich., 293.

In determining whether or not a contract is against public policy the courts are governed by the purpose and tendency of the agreement as entered into, and not the performance or non-performance of the illegal agreement. Seeligson v. Lewis, 65 Texas, 215; Aycock v. Braun, 66 Texas, 201; Pollock, Contracts, 278, 281.

If any material part of a transaction between the creditor and his debtor is, by the creditor or those acting for him as his agents and in his interest, misrepresented to the surety, the misrepresentation being such that, but for the same having been made, either the suretyship would not have been entered into at all, or, if entered into, the surety's liability might be thereby increased, the surety in such case is discharged from all liability. 2 Brandt, Suretyship, secs. 401, 419–423; Galbraith v. Townsend, 20 S. W. Rep., 943; Screwmen v. Smith, 70 Texas, 168; 24 Am. and Eng. Encycl., Law, 793; 2 Pomeroy, Equity, sec. 907; Bank of Monroe v. Anderson, 22 N. W. Rep., 929.

Where a creditor or obligee receives a surety known to be acting and induced to sign upon the belief that there are no unusual circumstances by which his risk will be materially increased, well knowing that there are such circumstances, and having an opportunity to make them known, and withholding them, it must be regarded as legal fraud which would discharge the surety. 2 Brandt, Suretyship, sec. 420; 2 Pomeroy, Equity, sec. 907; 24 Am. and Eng. Encycl., Law, 793; Bank of Monroe v. Anderson, 22 N. W. Rep., 929; Screwmen v. Smith, 70 Texas, 168.

Where a surety is induced by the obligee or his agent to sign a note, by the use of false pretensions and promises as to matters to be performed in the future, when the obligee at the time they were made knew existing facts render impossible their fulfillment, it must be presumed that they were representations made with a specific fraudulent intent for the purpose of misleading and inducing the surety to sign said note, and is such fraud as will discharge the surety. Henderson v. Railway, 17 Texas, 560; Railway v. Titterington, 84 Texas, 219; Halsell v. Musgraves, 24 S. W. Rep., 358; Dowd v. Tucker, 41 Conn., 197; Wilson v. Eggleston, 27 Mich., 257; Gross v. McKee, 53 Miss., 536; History Co. v. Flint, 4 Willson's C. C , sec. 224.

The contract being void as against public policy, the court will leave the parties as it finds them, unless the rights of innocent third parties intervene; if the agreement be executed, the court will not rescind it; if executory, the court will not aid in its execution. Wegner Bros. v.

Biering, 65 Texas, 506; Seeligson v. Lewis, 65 Texas, 215; Robinson v. Patterson, 39 N. W. Rep., 21; Appeal of Bredin, 92 Pa. St., 241; Roll v. Raguet, 4 Ohio, 400.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals have certified to this court the following explanatory statement and questions:

"The appellant, the plaintiff below, brought suit against P. B. Cruger and Miss Fannie Cruger, as the signers and makers of the following described note:

" 'WACO, TEXAS, December 10th, 1894.

" 'Six months after date, I promise to pay to the order of the American National Bank, of Austin, Texas, three thousand five hundred dollars, with interest at the rate of ten per cent per annum from date until paid, and an additional ten per cent of the principal, if this note is placed in the hands of an attorney for collection, after maturity.'

"The appellee, Miss Fannie Cruger, among other things pleaded that P. B. Cruger was the principal upon said note, and that she was a surety, and that she was induced to sign and execute the note by reason of false and fraudulent representations made by one Hunter and another party, who then were representing the plaintiff in procuring the note, as follows: That P. B. Cruger, who was an employe in the appellant's bank, had overdrawn his account in the sum of $3,500; and that the bank only desired the note for the purpose of placing it among the assets of the bank, so that when the national bank examiner, who was soon expected in Austin, would examine the books of the bank, this note could appear as payment for the $3500 withdrawn from the funds of the bank by P. B. Cruger, and that the note was to be used solely for this purpose, and that Miss Fannie Cruger should never be held liable thereon, and that the amount represented by the note would in fact be paid off and discharged by Mrs. H. H. Cruger, the mother of P. B. Cruger, conveying to the bank her home in the city of Austin.

"She further alleges that as a matter of fact, P. B. Cruger was at that time indebted to the bank in the sum of $7000 instead of $3500; but she was not aware of that fact, and that her sole knowledge of the amount of the indebtedness due by Cruger was from the representations and statements made by Hunter and others, who procured the note for the bank.

"She further states that said representations and statements made by Hunter solely induced her to execute the note, and that she believed at the time that said representations and statements were true, and that the bank and those that made the representations would comply with the promises made to her when the note was executed. That said representations were falsely, knowingly, and fraudulently made for the purpose of misleading and deceiving her and for the purpose of procuring the execution of the note; and in effect alleges that at the time that the representations and promises were made there was no intention upon the part of Hunter or the bank to keep the promises.

"The court below in effect instructed the jury that if they should find that Hunter and the other person alleged in the pleadings to have made the representations were at the time the agents of the. plaintiff, and that said representations were falsely and fraudulently made, and that they did induce the defendant, Miss Fannie Cruger, to execute the note, they should find in her favor. The jury returned a general verdict in favor of Miss Fannie Cruger, upon which judgment was rendered.

"As a predicate to the question hereinafter propounded, the Court of Civil Appeals for the Third Supreme Judicial District of Texas finds the following facts:

"That the above described note was executed by P. B. Cruger and Miss Fannie Cruger. That P. B. Cruger was the principal, and that Miss Fannie Cruger was the surety upon the note. That immediately prior to the execution of the note, P. B. Cruger had been one of the employes connected with the appellant bank, and that during that time he, without the consent of the bank, had used and appropriated to his own use about the sum of $7000. A day or so prior to the execution of the note, $3500 of this amount was discharged by the sale of the homestead of the mother of P. B. Cruger, to one J. H. Houghton, who was one of the officers of the plaintiff bank; and as consideration therefor Houghton assumed and did pay to the bank, the sum of $3500. The note in controversy was executed to cover the remaining $3500 that was due.

"Miss Fannie Cruger, an aunt of P. B. Cruger, then lived at Waco, Texas. Mr. Hunter and Miss Lottie Cruger, a sister of P. B. Cruger and niece of Miss Fannie Cruger, went to Waco, Texas, at the request of Mr. E. M. House, a director in the plaintiff bank, and at the request of P. B. Cruger, in order to get Miss Fannie Cruger to make and execute the note sued upon. When they reached Waco, they stated to Miss Fannie Cruger that P. B. Cruger had overdrawn his account with the bank to the amount of $3500, and that they wanted her to sign a note to the bank with P. B. Cruger, for this amount, so that the note might be placed and appear among the assets of the bank in case the bank examiner, who was expected to arrive the next day, should come; and that she should never be expected to pay the same; that the amount of $3500 would be paid off by a sale of the home in Austin of Mrs. Cruger, the mother of P. B. Cruger; and she at the time stated that she could not sign the note with the expectation of ever having to pay it, as she had nothing to pay it with, and they represented to her that she would never be called upon to pay a cent of it, as it was to be paid by the sale of the home, and was only wanted until this could be done, so that the bank examiner might see. the note, if he came. Mr. Hunter drew up the note, and the same was delivered to him, and he forwarded it to the plaintiff bank.

"At the time Miss Fannie Cruger executed the note she believed the statements, representations and promises to be true, and that they would

be complied with, and that she would not have executed the note, but for her belief in that respect. The parties who made those representations, statements and promises to Miss Fannie Cruger, at the time, knew that it was not the purpose of the bank to comply with such promises, and they had no authority from the bank to make any such representations and promises, and that the representations and promises were falsely and designedly made for the purpose of procuring the execution of the note by Miss Fannie Cruger, and without the intention upon their part, that such promises would be kept.

"As a fact, it was not the intention of the bank in receiving the note that it should be used for the purpose of deceiving or misleading the bank examiner; but it was received and accepted by the bank in satisfaction of the amount due and unpaid the bank by P. B. Cruger.

"Now in view of these facts, the Court of Civil Appeals for the Third Supreme Judicial District of Texas and the Chief Justice thereof certifies to the Supreme Court of Texas the following questions which arise on the record in this case now pending in this court and which are material to the disposition of the case:

"1. Does the fact that Miss Fannie Cruger was led to believe, by reason of the foregoing representations and statements, that the note should only be used for the unlawful purpose of deceiving and misleading the bank examiner, coupled with the fact that it was executed by her solely for this purpose, although, as a matter of fact, it was not the intention of the plaintiff bank, or the parties who made the representations and promises to her, that the note should be used for any such purpose, render the note void, and preclude the plaintiff from maintaining an action in order to hold Miss Fannie Cruger liable on the note? If this question should be answered in the negative, then we ask the court to consider the following questions:

"2. Are the representations and promises which were falsely and fraudulently made to Miss Fannie Cruger and relied upon by her as inducements to the execution of the note in law sufficient as a complete defense to the plaintiff's suit, and are they of such a character as would authorize the cancellation of the note in question?

"3. Does the fact that Miss Fannie Cruger, when she executed the note, believed that it was to be used by the plaintiff bank solely for the unlawful purpose of misleading and deceiving the bank examiner, although, in fact, such was not the intention of the bank, preclude her from setting up such promises and representations, in order to relieve her from liability upon the note?"

We understand the first question to be, in effect, "do the facts stated therein, (1) that Miss Fannie Cruger was led to believe that the note would only be used for the unlawful purpose of deceiving the bank examiner, (2) that she executed same for that purpose, (3) that the bank did not intend to so use it, and (4) that the parties who made the representations and promises to her did not intend that it should be so used, render the note void in law?" It will be observed that neither in

the question nor the previous statement made by the Court of Civil Appeals is it found as a fact that the parties who made the representations were the agents of the bank, either by previous appointment or by subsequent adoption. Hence in answering the question we cannot consider their agency to have been found as a fact by said court. It is of no consequence here that the jury, under the charge referred to above, may have found such to have been the fact, for we cannot assume that the Court of Civil Appeals will not find differently. But it is contended that, as a matter of law, the acts and representations of Hunter and Miss Lottie Cruger are chargeable to the bank and they are to be held to have been its agents, because it accepted and now seeks to enforce the note procured thereby after it has been notified thereof by the answer of Miss Fannie Cruger herein. The legal proposition relied upon is stated in Paley on Agency, 324, thus: "Contracts made for the benefit of another, without his privity or direction, may be rejected or affirmed at his election. But, by making the election to affirm it, he adopts the agency altogether, as well that which is detrimental as that which is for his benefit. But in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by any conduct of his agent which would have had that effect if proceeding from himself. Every species of fraud, misrepresentation, or concealment, therefore, in the agent, affects the principal's right to recover." Under the principle here announced, if Hunter and Miss Lottie Cruger without authority from the bank undertook in its behalf to secure the shortage by procuring the note of P. B. Cruger and Miss Fannie Cruger, the acceptance of the note by the bank with the knowledge that they had thus assumed to act for it would be a ratification or adoption of their assumed agency, and the bank would be chargeable with the fraudulent representations made by them to Miss Fannie Cruger to the same extent as if they had been in fact its agents at the time of making such representations. This is upon the plain proposition that the subsequent ratification or adoption would relate back so as to make them agents to the same extent as if they had been previously appointed.

But, on the other hand, if P. B. Cruger agreed with the bank to give his note signed by Miss Fannie Cruger as surety in settlement of his shortage and thereupon Hunter and Miss Lottie Cruger acting in his behalf secured her signature, the bank by subsequent acceptance of the note could not be held to have made them its agents by ratification or adoption, for they did not assume to be such; and therefore it would not be chargeable with their fraud, not in fact perpetrated in its behalf but in behalf of P. B. Cruger. If this were not true, every surety could avoid his obligation by showing that his principal or some one acting for him had secured his signature by fraudulent representations of which the creditor had no knowledge at the time of advancing his money upon the instrument. In such an event the bank would reap a benefit from the fraud perpetrated in behalf of P. B. Cruger. Thompson in his "Commentaries on Corporations," sec. 6324,

after quoting with approval the above language from Paley on Agency recognizes the distinction we have above made in the following language: "It is submitted, however, that this principle, properly understood, is not that a person or corporation cannot retain an advantage secured by the fraud of another; but that a person or corporation cannot retain an advantage secured by the fraud of its agent, that is, by the fraud of one who has acted for it, with whom it is in privity, or whose unauthorized acts, done for its benefit, it has adopted. There must a relation of agency, arising either out of antecedent authorization or subsequent adoption, or at least a privity, between the wrong-doer and the person or corporation receiving the benefit. Such a privity may arise by relation, by an adoption by the corporation of the act of the person who has thus acted for it, provided the corporation have knowledge of the means by which he secured the contract, where the person so acting for it was, when he so acted, a stranger to it. But if the person so acting was, when he so acted, the agent of the corporation, the corporation, by accepting the benefit of his act, adopts also the means by which he procured it, although it may have had no knowledge as to what those means were. To make this plain, let us suppose two cases. The board of directors of a corporation send out an agent to solicit subscriptions to its capital stock. This agent makes false representations, on the faith of which he induces a person to subscribe. The subscriber is entitled to a recission, although neither the directors nor the body of shareholders either authorized or even knew of the making of the false representations. On the other hand, a mining company is organized and purchases a claim of unknown value. A, who is an entire stranger to the company, believing that its claim is of no value and that its stock is worthless, but desiring to deceive and injure B., makes false representations to B. about the value of the company's claim, on the faith of which B. applies to the secretary of the company for shares and receives an allotment of them. No officer or member of the company knows anything about the fraud which induced B. to make this purchase. Obviously, by taking the purchase money paid by B. for the shares, they do not adopt the fraud by which he was led into the contract, and, if the shares turn out to be worthless, he cannot have a recission. He was led into it by a fraud, but it was a fraud of a third person, wholly collateral to the contract, and one which can in no way affect their right to hold him to his bargain. His remedy is an action of deceit against A." It results that we cannot sustain the contention above stated, that as a matter of law the acts and representatations of Hunter and Miss Lottie Cruger are chargeable to the bank. Then since it has not been found as a fact and cannot be held as a matter of law that they were agents of the bank, we must answer the question upon the group of facts stated therein. We cannot say that these facts render the note void, since it does not appear therefrom that the bank was a party to or had knowledge of the illegal purpose at the time it accepted the note whereby their right to

proceed against P. B. Cruger was postponed six months. We do not understand a contrary rule to have been announced in Wheeler & Wilson Co. v. Aughey, 144 Pa. St., 398, though upon a casual reading it would seem so. There H. C. Landis was alleged to have been the agent, and the court held that, "For the purpose of obtaining the notes, Landis most certainly acted as the representative of the plaintiffs, and they conclusively accepted the fruits of his act." This fact having been established, plaintiffs of course could not hold the notes and avoid responsibility for the fraud by which their agent obtained them. If the court had not found such agency to have been established by the evidence, it would have had the question before us here. If however we are not correct in our analysis of this case, and if it really holds that plaintiffs, simply by accepting and seeking to collect the notes procured by the fraud of Landis, acting not for them but for himself and perpetrated in order to induce his uncle to sign, are to be held responsible for such fraud, we are not prepared to follow it.

If it be found as a fact, under the principles above stated, that Hunter and Miss Lottie Cruger were agents of the bank, then we think the second question should be answered in the affirmative. The representation that the note would be paid by sale of the homestead when they knew it had been consumed, was of itself sufficient. The fact that it was not available increased the probabilty of the surety being compelled to pay. It was the only source from which the parties claimed that the insolvent P. B. Cruger could pay and save the surety.

We are in doubt as to the meaning of the third question. The mere fact that Miss Fannie Cruger thought the note was to be used for an unlawful purpose would not preclude her from defending on account of its illegality; for it is well settled that either party to an executory contract can show its illegality to defeat or cancel same. Beer v. Landman, 88 Texas, 450; Edwards County v. Jennings, 89 Texas, 618; Reed v. Brewer, 37 S. W. Rep., 418. The fact that the bank did not intend to so use it would not affect her defense if it should be found that Hunter and Miss Lottie Cruger were its agents. For if they, acting for the bank, so agreed with her, then the unlawful agreement became a part of the consideration upon which she signed, and their principal, the bank, would not be heard to destroy such consideration and thereby legalize the note by showing a secret purpose on the part of itself and its agents not to so use it. If, however, such persons be not held to be agents of the bank, then such defense would not avail her, because the bank would not then be shown to have been a party to the illegal agreement or to have had notice thereof prior to its acceptance of the note.