## SARGENT et al. v. BARNES.

(Court of Civil Appeals of Texas. Austin. March 26, 1913. On Motion for Rehearing, June 25, 1913.)

1. APPEAL AND ERROR (§ 743*)—ASSIGNMENTS OF ERROR—REFERENCE TO RECORD.

Supreme Court Rule 25 (142 S. W. vii), requiring the assignments of error to refer to that portion of the motion for new trial in which the error is complained of, does not apply to assignments of error to the charges given or refused by the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

2. PRINCIPAL AND AGENT (§ 123*)—AUTHORITY OF AGENT—SUFFICIENCY OF EVIDENCE.

In an action to cancel a contract for the sale of land on the ground of fraudulent representations, evidence *held* sufficient to show that the one who made the misrepresentations was expressly authorized by the manager of the land to make the sale, and that the owners knew of such authorization and acquiesced therein.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

3. PRINCIPAL AND AGENT (§ 14*)—LIABILITY TO THIRD PERSONS—IMPLIED AUTHORITY—SALE OF LAND.

Where the owners of land knew that an agent was endeavoring to sell it and were present on the property during the several days that the negotiation was being carried on, they will be held to have acquiesced in the agency if they made no objection thereto, since, so far as the rights of third persons are concerned, the authority of an agent will be presumed where one has held another out as his agent or knowingly permitted him to act as such.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 26–33; Dec. Dig. § 14.*]

4. PRINCIPAL AND AGENT (§ 23*)—LIABILITY TO THIRD PERSONS—SUFFICIENCY OF EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

Agency may be established by circumstantial evidence.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

5. PRINCIPAL AND AGENT (§ 171*)—LIABILITY TO THIRD PERSONS—IMPLIED RATIFICATION—ATTEMPT TO ENFORCE CONTRACT.

Where a purchaser, who had given a note as liquidated damages to bind a contract for the sale of land, notified the owners that he refused to carry out the contract because of misrepresentations of the agent who negotiated the sale, the act of the owners in thereafter bringing suit upon the note was a ratification of the acts of the agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–655; Dec. Dig. § 171.*]

6. PRINCIPAL AND AGENT (§ 158*)—LIABILITY TO THIRD PERSONS—FRAUD OF AGENT.

The owners of land are liable for any fraudulent representations made by their agent whereby a purchaser was induced to buy the land whether they had any knowledge of the representations or not.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 589–598; Dec. Dig. § 158.*]

7. PRINCIPAL AND AGENT (§ 22*)—LIABILITY TO THIRD PERSON—EVIDENCE OF AGENCY—DECLARATIONS OF AGENT.

Agency cannot be established by the declarations of the agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. § 22.*]

8. PRINCIPAL AND AGENT (§ 22*)—LIABILITY TO THIRD PERSONS — EVIDENCE — DECLARATION OF AGENT.

The acts and statements of an alleged agent, made while negotiations are pending for the sale of land, are admissible, in an action to rescind the contract for the agent's fraud in connection with direct testimony of the acts and statements of the principal and direct testimony establishing agency, especially where the principals were present during the progress of negotiations.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. § 22.*]

9. PRINCIPAL AND AGENT (§ 22*)—LIABILITY TO THIRD PERSONS—EVIDENCE—UNSIGNED MEMORANDUM.

In an action to set aside a contract for the sale of land for fraud of the agent who negotiated the sale, a memorandum of sale prepared by the agent but which was never signed was admissible, over the objection that there was a subsequent written contract entered into between the parties, where it tended to show the agency and corroborated the testimony of the purchaser.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. § 22.*]

10. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—OVERRULING EXCEPTIONS TO PETITION.

Where the evidence warrants the cancellation of a written contract for the sale of land on the ground of fraudulent representations, rulings of the court on exceptions to the petition because the facts to set up a verbal contract for the sale of land at variance with the written contract are immaterial, and error therein is harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**11. EVIDENCE (§ 185*)—SECONDARY EVIDENCE —CONTENTS OF LETTER—NOTICE TO PRODUCE ORIGINAL.**

Where a purchaser of land kept no copy of a letter which he wrote to the agent of the vendors, rescinding the contract on account of the fraud of their agent, and had given the vendors notice to produce the letter, he had a right thereafter to testify as to its contents.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 642-660; Dec. Dig. § 185.*]

**12. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSIBILITY OF EVIDENCE—DECLARATIONS OF AGENT.**

The admission of the letter written to the agent and his reply thereto confirming the representations which he had previously made were not prejudicial to the owner where the transaction had not been closed and the agent was still interested therein.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153-4157, 4166; Dec. Dig. § 1050.*]

**13. EVIDENCE (§ 553*)—OPINION EVIDENCE— HYPOTHETICAL QUESTION—REQUISITES.**

A hypothetical question must embrace, and be based upon, the facts in evidence relating thereto.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369-2374; Dec. Dig. § 553.*]

**14. VENDOR AND PURCHASER (§ 36*)—VALIDITY OF CONTRACT—MISREPRESENTATIONS AS TO QUALITY.**

Where a purchaser had contracted for first-class farming land that would not overflow, he had a right to refuse to take overflow lands, no matter what they might produce.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 40, 52, 53; Dec. Dig. § 36.*]

**15. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR — INSTRUCTIONS — APPLICABILITY TO ISSUES.**

In an action to rescind a contract for the purchase of land on account of fraud of the agents who negotiated the sale, where the plaintiff could not recover without showing that the persons making the representations were agents of the owners and had made material misrepresentations as to the nature of the land, it was immaterial that the court charged as to a conspiracy to make a sale of the land, so that any error therein was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by J. M. Barnes against Jane Sargent and others. Judgment for the plaintiff, and defendants appeal. Affirmed on rehearing.

Gaines & Corbett, of Bay City, and W. B. Garrett, of Austin, for appellants. Sam D. Snodgrass, of Temple, and L. A. Dale, of El Paso, for appellee.

RICE, J. The parties hereto on the 28th of June, 1911, entered into a written contract whereby the appellants bound themselves to convey by warranty deed to appellee 12,000 acres of land in Matagorda county, Tex., in consideration of the payment by him to them on the 1st of December, 1911, of $62,000 cash and the execution of his five vendor's lien notes of same date, each for the sum of $26,000, payable on the 1st days of December, 1912, 1913, 1914, 1915, and 1916, respectively, bearing interest and providing for attorney's fees. Appellee likewise executed to appellants his note for $12,000, payable December 1, 1911, secured by deed of trust on seven sections of land in Crosby county, Tex., which note, as evidenced by its recitals, was given by him as consideration for said contract, and the depositing of said deed in escrow, and the making of survey, preparation of abstracts, and other expenses incurred and to be incurred by appellants; said contract providing that all of said papers were to be deposited in escrow with the Bay City Bank & Trust Company, to be delivered by it to the respective parties thereto upon certain conditions therein set forth, not necessary to be here stated.

It is claimed by appellee that the agents of appellant fraudulently represented said land to be good farming land; that only about 2,000 or 3,000 acres thereof would overflow during excessive Gulf storms, whereas only about 1,000 acres thereof were suitable for farming, and the larger part thereof was subject to overflow, by reason of which said land was of far less value than he agreed to pay therefor; and this suit was brought by him on the 12th of September, 1911, in the district court of Crosby county, Tex., against appellants, seeking to cancel, on the ground of fraud, said written contract, as well as each of said notes and the deed of trust on said Crosby county lands.

Appellants answered by special exceptions, general and special denials. On the 6th of December thereafter appellants instituted suit against appellee in the district court of Matagorda county to enforce the collection of said $12,000 note and to foreclose said deed of trust given to secure same. Appellee answered setting up the fraud as above referred to, and by cross-action praying for cancellation of said note and deed of trust. By agreement of all the parties, the suits in Crosby and Matagorda counties were consolidated and transferred to the district court of Travis county, where the same was tried before a jury, resulting in a verdict and judgment May 4, 1912, in favor of appellee, canceling said contract, as well as all of said notes and the deed of trust, and denying appellants any recovery in their suit, from which judgment this appeal is prosecuted.

Appellants' brief contains 132 pages. There are 50 assignments of error, covering 30 pages of the transcript, 32 of which are copied in appellants' brief and insisted upon as grounds for reversal. The motion for new trial is voluminous, covering 20 pages of the transcript, with 49 separate and distinct paragraphs, and was filed in the trial court May 25, 1912; the assignments of error being filed August 31, 1912.

Appellee, by his counsel at the hearing, insisted that appellants' brief should not be

considered by us for the reason that it did not conform to rules 24 and 25 for the government of this court, as amended by the Supreme Court January 24, 1912. See 142 S. W. vii. The substance of rule 24 is that no question shall be considered on appeal that was not presented in the court below on motion for new trial, and that the assignment of error must distinctly specify the grounds relied upon. Rule 25, among other things, in setting forth what constitutes a distinct specification of error, requires the assignment to refer to that portion of the motion for new trial in which the error is complained of.

It has recently been held by us in the case of Tinsley v. Bottom, in an opinion by Mr. Chief Justice Key, handed down March 19, 1913, and not yet published, that a failure to conform to these rules will be sufficient ground for disregarding an assignment of error, and this irrespective of whether or not objection is made thereto by the opposite party. It is true in that case that the rules were not enforced, chiefly on the ground that the same, when the assignments of errors were filed, had not been officially published, and for the further reason that the motion for new trial complained only of the action of the court below in one particular, which was the only reason assigned for reversal. In the instant case the trial occurred in the latter part of May, 1912, and the assignments of error were not filed until the 31st of August thereafter, seven months after the adoption of said rules, and at least four months after 142 Southwestern Reporter containing same reached the hands of the profession; and the brief, as we have seen, presents many assignments of error. So that no such reasons exist here as obtained in that case for excusing a failure to conform to said rules. See, also, St. L. S. W. Ry. Co. of Texas v. Ledbetter, 153 S. W. 647, where it was held, upon objection, that a failure to comply with these rules constituted a waiver of the assignments and necessitated an affirmance of the case.

We have carefully examined the brief of counsel and each of the assignments copied therein and find no reference to the motion for new trial in the lower court nor to any paragraph of said motion; the same being wholly ignored. It appears at once how important the observance of these rules is for the orderly dispatch of business in this court. Without such reference in the assignment to that portion of the motion for new trial in which the error is complained of, it would be necessary, in the proper consideration of this case, for the court to review the entire motion (which we are not expected or called upon to do) in order to ascertain whether or not the question complained of was properly brought to the attention of the trial court, without which it could not be regarded as sufficient ground upon which to predicate the assignment; but the error should be considered as waived under rule 24, unless so fundamental that the court would act upon it without an assignment. But where, as here, the opposite side is insisting that the assignments should be disregarded on account of failure to comply therewith, it becomes our duty to disregard the said assignments.

No fundamental error appearing upon the record, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

[1] This case was heretofore affirmed by us without reference to the merits on the ground that the assignments of error did not conform to the rules prescribed for the government of this court, as indicated in the opinion heretofore rendered herein, since which time it has been held by the Supreme Court in Missouri, K. & T. Ry. Co. of Texas v. Beasley (Sup.) 155 S. W. 183, that the rules did not require that assignments complaining of charges given and refused should be set up in the motion for new trial; and, as under the authority of that case we deem it our duty to consider the assignments raising questions with reference to the charge of the court, we will recede from our former holding and will discuss all of the questions presented in appellants' brief. We therefore grant appellants' motion for rehearing to the extent only of considering their assignments of error.

Motion granted in part and in part overruled.

### Statement of the Case.

We adopt appellants' statement of the case, as appellee concurs therein, with an immaterial exception, which statement is as follows:

On the 12th day of September, 1911, the appellee, J. M. Barnes, as plaintiff, instituted suit in the district court of Crosby county against Jane Sargent and Kate Sargent Rugeley, with her husband, James W. Rugeley, and the Bay City Bank & Trust Company, seeking to cancel on the ground of fraud a certain written contract which he entered into on June 28, 1911, for the purchase of about 12,000 acres of land in Matagorda county, Tex., and certain purchase-money notes which he executed as part payment for said land, and also to cancel a note for $12,000, which he gave as liquidated damages in the event of his breach of the contract, and a deed of trust on lands in Crosby county to secure the same. By an amended petition filed April 29, 1912, on which the case went to trial, it is alleged that about June 26, 1911, he entered into a verbal contract with the defendants Jane Sargent, Kate Sargent Rugeley, and her husband, James W. Rugeley, to purchase from them about 12,000 acres of land situated in

Matagorda county, Tex.; that one B. E. Norvell, of Matagorda county, and one G. W. Terrell, of De Witt county, represented the defendants as their agents in the negotiations with plaintiff for the purchase of said land, who were duly appointed and empowered to sell said lands; that plaintiff informed said agents that he wanted first-class farm land and would purchase no other kind; that said Norvell and Terrell and J. W. Rugeley, husband of said Kate Sargent Rugeley, each and all represented to plaintiff that said land was first-class farm lands, were rich and very productive, and not exceeding 2,000 or 3,000 acres thereof would overflow, and then only in case of excessive Gulf storms and floods; that, relying on said representations, the plaintiff entered into said verbal contract to buy said lands, and on June 28, 1911, said contract was reduced to writing and signed by the parties. As said written contract is attached as an exhibit and made a part of said petition and is the basis of the controversy involved in this litigation, it is deemed advisable to here set out said contract in full. It is as follows:

"The State of Texas, County of Matagorda.

"This contract made and entered into on this the 28th day of June, A. D. 1911, by and between Jane Sargent, a widow, and Kate Sargent Rugeley, joined by her husband James W. Rugeley, all of Matagorda county, Texas, parties of the first part, and J. M. Barnes of Montgomery county, Alabama, party of the second part, witnesseth:

"(1) The first parties bind and obligate themselves to transfer and convey by warranty deed to the second party the following described tracts of land in Matagorda county, Texas, being a part of the Sargent ranch containing approximately 12,000 acres, being bounded on the west by Caney creek, and being out of and a part of the Van Dorn and Baylis, Hinton, Curtis, Mr. Baxter, M. D. Pearce, Wm. Keirans No. 518, John O'Brien No. 519, D. Mead No. 520, Robert Haley, A. Silsbee and Jacob Smith and J. W. Rugeley leagues and surveys, and being all of the land owned by the grantors out of the leagues and surveys named, contained within the Sargent pastures. Upon the following terms and conditions and no other: The second party binds himself to pay first parties at the office of the Bay City Bank & Trust Company, at Bay City, Texas, on December 1st, 1911, the sum of $62,000 in cash and to execute and deliver at the same time to said grantors his certain promissory vendor's lien notes, each for the sum of $26,000, each dated June 28th, 1911, payable on or before December 1st, 1912, 1913, 1914, 1915, and 1916 respectively, with interest at 7 per cent. from December 1st, 1911, the interest payable annually on December 1st, as it accrues, all principal and interest payable at the office of Bay City Bank & Trust Company, Bay City, Texas, each of said notes containing the usual maturity, deferred interest and attorney's fee clauses.

"(2) Upon the compliance by the second party with his obligation as set forth in the preceding paragraphs, the first parties will immediately deliver a warranty deed to the before described premises. However, reserving a vendor's lien for the deferred payments.

"(3) In furtherance of this contract and for convenience, the first parties have executed a deed of even date to said property, and the second party has executed the vendor's lien notes described and deposited same in escrow in Bay City Bank & Trust Company, at Bay City, Texas, but there is to be no delivery by said bank of said deed or of said notes until the terms of this instrument have been complied with.

"(4) The second party has this day made and executed a deed of trust to Jas. W. Rugeley, trustee, to secure a note of J. M. Barnes for $12,000, payable on December 1st, 1911, with interest after maturity at 7 per cent., and containing the usual attorney's fee clause, on seven sections of land in Crosby county, Texas, containing 4,480 acres, and this note is given by the second party as a consideration for this contract, and the depositing of said deed in escrow and the making of survey, and preparation of abstract and other expenses incurred and to be incurred by first parties.

"(5) Second party is to forward at once to Gaines & Corbett, at Bay City, Texas, a complete abstract of said land in Crosby county, Texas, and if an examination of same by Gaines & Corbett, which shall be made within fifteen days after said abstract is received, does not disclose a good title to said Crosby county land by record or limitation, they shall immediately wire said J. M. Barnes at Montgomery, Alabama, and said second party shall, within fifteen days, deliver a deed of trust on other properties in the state of Alabama of equal value, with abstract showing good title, or deposit with said Bay City Bank & Trust Company the sum of $12,000.

"(6) If the said Gaines & Corbett find the title to said Crosby county, Texas, land good and sufficient, or if the second party mortgages other lands to secure said note, or deposits the sum thereof, as aforesaid, then this contract shall continue in force until said first day of December, 1911, the delivery of said deeds to be dependent upon the payment of the $62,000 cash, and the delivery of said notes. If said title is not good and the security as above set forth is not deposited as aforesaid, then this contract shall be at an end, the first parties shall receive their deeds and the second party shall receive his notes. But it is expressly stipulated and understood that said $12,000 note is not to be received as a part of the

$62,000, but that the said $62,000 is to be paid in cash, and the said note is only to bind said payment.

"(7) The first parties shall, as soon as practicable, and by September 1st, 1911, have a survey made of said tract of land to ascertain the exact acreage belonging to said first parties in said pasture, and any excess therein shall be paid for by the second party on the same terms and conditions as the 12,000 acres, and at the rate of $16 per acre, and in the event of any deficiency therein the value thereof at $16 per acre shall be proportionately deducted from the $62,000 cash payment and the five vendor's lien notes. First party shall select their surveyor, but B. E. Norvell, as agent for the second party, shall be given by mail at his Bay City, Texas, address, five days written notice of the time such survey will be made, and second party shall have the privilege of having a surveyor present at his own expense to verify the work and figures of the surveyor employed by the first parties.

"(8) First parties shall prepare and deliver to the attorneys designated by the second party, full and complete abstracts to said property on or before July 15th, 1911, and in the event first parties shall receive no such designation, said abstracts shall be delivered at the office of B. E. Norvell, Bay City, Texas. Second party agrees to have said abstracts examined and written objections thereto delivered to Gaines & Corbett within thirty days from July 15, 1911, and all objections not submitted to Gaines & Corbett in writing by such date shall be waived by second party. If the abstracts so delivered to the representative of the second party shall disclose a good title to said land by record or limitation, the second party shall be bound to deliver his notes and pay the $62,000 in cash, $12,000 of which as earnest money is secured by the deed of trust before mentioned. If said abstracts do not disclose such title, then the first parties shall have until October 1, 1911, to perfect same to the satisfaction of the attorneys of the second party, and failing so to do, in the event such title is not disclosed as above set forth, this contract shall cease and terminate, the first parties shall receive back their deed and the second party his notes and likewise a release of the $12,000 note. If said abstracts, however, do not disclose such title as above set forth, or if the same is made satisfactory to the second party's attorneys, in the event said abstracts do not disclose such title, and second party shall refuse to pay over said $62,000 and deliver said vendor's lien notes, then the said note shall become the absolute property of the first parties as liquidated damages.

"(9) It is specially provided, however, that the second party must accept or reject said title in writing, delivered to Gaines & Corbett, Bay City, Texas, on or before October 10, 1911, and a failure so to do shall be construed as an acceptance of said title and all the conditions of this contract following the delivery of a perfect title by first parties shall follow.

"(10) It is agreed that first parties shall have the right to remove all crops raised on said land during the year 1911. And it is further agreed that the first parties shall have until January, 1912, to remove all their crops and personal property, and that they shall have the right to pasture their cattle on said land until June 1, 1912, and for such pasturage shall pay, in the event of the delivery of said deed to second party, the sum of $1,000 at Bay City on June 1, 1912, unless second party purchases said cattle.

"(11) This contract is performable in Bay City, Texas, and in the event of disagreement of construction or terms thereof, it is agreed that the district court at Matagorda county, Texas, shall have jurisdiction of the controversy.

"Witness our hands in triplicate originals, the day and year first above written, one copy to be held by each of the parties hereto, and the third to be held by the Bay City Bank & Trust Company, who is authorized by all parties to be governed by the terms hereof.

"[Signed]    Jane A. Sargent,
      "Kate Sargent Rugeley,
      "Jas. W. Rugeley,
         "Parties of the First Part.
    "J. M. Barnes,
         "Party of the Second Part."

Duly acknowledged by all parties.

It is alleged: That no memorandum of said verbal agreement as to the kind and character of the land, or of the representations made to plaintiff as to the character of said land, was reduced to writing, being only verbal. That, in pursuance with said written contract, plaintiff executed his five notes for $26,000 each, payable at one, two, three, four, and five years respectively from December 1, 1911, bearing 7 per cent. interest. That plaintiff executed and delivered to defendants his promissory note for $12,000, payable to Jane Sargent and Kate Sargent Rugeley, on December 1, 1911, at Bay City, Tex., and to secure the payment of said $12,000 note he executed a deed of trust on certain lands in Crosby county, Tex., naming Jas. W. Rugeley as trustee in said deed of trust. It is alleged that the $12,000 note and deed of trust were executed by plaintiff for the purpose of securing the payment of the $62,000 cash and to indemnify defendants against loss of expenses that might be incurred in having the land surveyed, making abstracts and deeds in case plaintiff failed to carry out his said contract of purchase of said lands, and as evidence of good faith in the purchase, and for no other purposes. That prior to making said contract plaintiff

requested said Norvell and Terrell to allow him to make a personal inspection of said lands. That said agents, in a seeming attempt to do so, carried him over only a part of said lands in an automobile, which was fertile, and assured him that the balance was of same character. That plaintiff told said agents that he was an old man and lived in Alabama and knew nothing about this kind of land and would rely on them to tell him the truth and not deceive him. That said agents said they would not deceive him and represented to him that said lands were first-class farm lands, very fertile, and capable of producing the usual crops grown in the country. That he told said agents that he would not buy overflow lands, and they represented to him that only 2,000 or 3,000 acres of said land ever at any time overflowed, and then only in case of excessive Gulf storms. That the plaintiff relied on said representations, which said agents knew, and but for said representations he would not have entered into said written contract. That, relying upon and believing said representations, plaintiff entered into said written contract to purchase said lands. That he would not have signed the written contract whereby he bound himself to buy said lands, nor would he have executed the $12,000 note or deed of trust, but for said representations so made to him by said Rugeley, Norvell, and Terrell. That the defendant James W. Rugeley, pending negotiations for the purchase of said lands, was in frequent conversation with the agents Norvell and Terrell, was cognizant of and acquiesced in all the representations made to plaintiff, and fully concurred in and encouraged them in making said representations. That said Rugeley, as husband of Kate Sargent Rugeley and near relative of Jane Sargent, co-owners with him of said land, was the manager of said ranch and exercised control over the same, and the things done in and about the sale of said lands to plaintiff were done by said Rugeley, through himself and his said agents, with the knowledge and consent of said co-owners, and that the acts of said Rugeley were the acts of said co-owners of said lands, and that by the execution of said written contract said defendants ratified the acts and representations of said agents. That all of said representations as to the character and kind of said lands made by said Norvell, Terrell, and Rugeley were false, and known to be so, and were made for the fraudulent purpose of inducing plaintiff to act thereon, and he did so act in executing said written contract and notes. That in truth all of said land overflowed in time of excessive Gulf storms, and that some 6,000 to 8,000 acres overflowed at frequent intervals, and only about 1,000 acres can be farmed, and that with difficulty. That the great bulk of said land was low and could not be drained and was not first-class farm lands. That said representations were very material

and affected the value of said land, and especially as he contracted to buy said land at the price of $16 per acre, whereas the same was not worth exceeding $3 per acre. That defendants and said Norvell and Terrell conspired together to defraud plaintiff, and defendants and Norvell used Terrell, who was a member of and a minister in the same church with plaintiff, for that purpose, knowing that plaintiff would rely on representations which said Terrell would make to him. That, after plaintiff concluded to repudiate his said contract on the ground of said misrepresentations, he informed said Rugeley thereof, and said Rugeley replied that he had made no misrepresentations to him and was not responsible for what Norvell and Terrell might have said to him. That defendants agreed to pay said Norvell and Terrell large sums of money if plaintiff bought said lands, and that they had a pecuniary interest in making said sale. That defendants failed to deliver abstracts to plaintiff's attorneys under said contract. That in August, 1910, defendants conveyed 200 feet across part of said land to the United States government for canal purposes, and defendants had never tendered to the plaintiff proper deeds under the terms of said written contract and had breached said contract. That plaintiff executed all of the instruments sought to be canceled before he discovered said fraud, and after said discovery he wholly repudiated said written contract and so notified defendants and requested the cancellation and return of his said notes and release of said deed of trust, but that defendants refused to do so. That plaintiff learned about July 1, 1911, that said lands were not good farming lands, and at once notified Norvell, as agent of the owners, not to go to any further expense, as he would not take the land. Plaintiff prayed for cancellation of all of said notes and deed of trust and said written contract to purchase said land.

The defendants answered by several special exceptions directed against plaintiff's petition: (1) Challenged the sufficiency of paragraph 2 of said petition on the ground that it seeks to set up a verbal contract for sale of the land between the parties, while the pleadings show that Kate Sargent Rugeley was a married woman; that part of said land was her separate property; and that Jane Sargent signed the contract in her own right and not through Rugeley as agent, and because sale of said real estate could not be made verbally. (2) That it alleges a verbal contract to purchase said land and attempts to show the terms of the written contract by construction, which is at variance with and alters the written contract attached to said petition; and exceptions to paragraphs 4 and 11 alleging that the $12,000 note was an indemnity or penalty because the contract attached to said petition showed said note was liquidated damages. They answered by

general denial and specially denied that there was any verbal contract of sale; that the only contract ever made was in writing and a copy is attached to said petition; denied specially that Norvell and Terrell, or either of them, were their agents for the sale of said land, and that before said contract was made plaintiff was informed that said Norvell was not their agent in any sense; they deny that the $12,000 note was merely an indemnity, and denied that Norvell or Terrell' were their agents, and denied any responsibility for any representations; they specially denied that they knew of any representations made by Norvell and did not ratify any.

On December 6, 1911, the appellants Jane Sargent and Kate Sargent Rugeley, joined by her husband, James W. Rugeley, instituted suit against appellee, J. M. Barnes, in the district court of Matagorda county, Tex., to recover $12,000, with interest and attorney's fees on the note executed and delivered by said Barnes to them under the terms of said contract and to foreclose the deed of trust given to secure the same. The appellee answered in said suit, setting up fraud, etc., practically the same as alleged in his amended petition above referred to, and by cross-action asked for cancellation of said note and deed of trust. By supplemental petition appellants directed several special exceptions against said answer and specially denied the allegations therein. By agreement of all parties, the suit in Crosby county and the one in Matagorda county were consolidated and transferred to the district court of Travis county, Tex. The court on hearing appellants' exceptions overruled the same, and exceptions were reserved.

The consolidated cause was tried by jury on April 29, 1912, and on May 4, 1912, verdict was returned in favor of appellee and judgment entered thereon canceling said contract, all notes and deed of trust, and denying appellants any recovery in their suit, from which judgment this appeal is prosecuted.

### Opinion.

While appellants present many assignments, their chief contention seems to be that Norvell, the alleged agent through whom the contract of sale was made, was not their agent and was never authorized by them to make same, which questions are raised by the first, second, third, and sixth assignments.

[2] Appellee, who was desirous of purchasing a large tract of farming land, in June, 1911, visited Texas for this purpose; that upon his arrival in Bay City he met B. E. Norvell, a land agent of said place, who claimed to be agent for appellants, who owned a body of land such as he was looking for; and that he, in company with said Norvell and another land agent by the name of Terrell, accompanied by his wife and L. J. Davis, went to the Sargent or Rugeley ranch for the purpose of looking at same. Upon their arrival there they met the owners of said tract of land, to wit, Mrs. Kate Sargent Rugeley, Mrs. Jane Sargent, and Jas. W. Rugeley, who were just preparing to leave for a fishing trip. Rugeley declined to show the parties over the ranch, stating that he was going fishing and that if they wanted to look at the land they could do so, informing them, however, that he would see them when he came back; but before leaving Rugeley and Norvell had a private conference. During the morning appellee was taken in an automobile by Norvell over the best part of this land, lying along Caney creek, but was not carried over other portions of the land, for the reason that the same was too rough to travel over in the auto. Soon after this Norvell and appellee went down upon the coast where they met Mr. Rugeley, and a conference again took place between him and Norvell. It appears from what transpired between the parties that Rugeley knew the purpose and object of appellee's visit, and previous to their coming had authorized Norvell to sell the land at $15 per acre, agreeing to pay him therefor the sum of 5 per cent. commission. Two days were spent at the ranch, during which time an agreement was made whereby appellee was to buy the ranch, supposed to contain 12,-000 acres, for the sum of $16 per acre. During the time negotiations were pending, it is shown that Norvell' had a conversation with James Rugeley in which he informed Rugeley that he had told appellee that $16 an acre was the price of the land, and wanted Rugeley to sustain him in this, stating that out of this he would have to pay a commission of $1 an acre to Terrell and Davis. After some hesitation Rugeley agreed to this proposition. During the two days spent at the ranch, appellee and his wife and Rugeley and his wife and Mrs. Sargent spent most of the time near the ranch house under separate trees in the yard, and Norvell had frequent conferences with the respective parties with reference to this purchase and sale. It is not shown, however, what was said by him to the Rugeleys, but all these conferences occurred prior to the execution of the contract sought to be canceled and hereinbefore set out. A memorandum of agreement was prepared by Norvell wherein it was recited that Norvell was the agent of Rugeley; and, while this memorandum was not signed by Rugeley, yet no objection was made to anything contained therein; but he stated that he preferred a contract of such moment to be prepared by his attorney, for whom he dispatched a messenger to Bay City. Upon arrival of the attorney, he informed the parties at interest that he was not prepared to draw the contract and other papers necessary to complete the transaction at the ranch on account of the want of facilities, but must do so at his office, where-

upon it was agreed that all parties should go to Bay City, where the contract was to be prepared and executed the next day, which was accordingly done. The testimony shows that appellee wanted to purchase first-class farming lands, which he intended to leave to his children; that he repeatedly told Norvell that he did not want any other kind or class of land; that he was an old man, unfamiliar with lands in Texas, and was compelled to rely upon his statement as to 'the character and nature of the land; that he did not want land that would over-flow. It is shown that Norvell stated to him that the land was first-class farming land; that only about 2,000 to 3,000 acres thereof would overflow, and that during excessive storms from the Gulf. While there is some conflict in the evidence, these statements were shown to be untrue. At times all of said ranch would overflow, it appearing that it was covered with driftwood; that only about 1,000 acres thereof was good farming land, the balance being covered with wire or salt grass, and was only fit for winter pasture, and was of far less value than it would have been if the representations had been true. We think the evidence satisfactorily shows that Norvell had authority and was expressly authorized by James Rugeley, the manager of this property, to sell same; and the circumstances also justify the conclusion that Mrs. Sargent and Mrs. Rugeley were cognizant of the fact that Norvell was undertaking to make a sale of the ranch to appellee and acquiesced therein.

[3] An agency may be implied from acquiescence. Mechem on Agency, § 97. Rugeley was the manager of the ranch, and it appears the same was for sale, and that he had given authority to Norvell, as well as other agents, to sell it; his wife and his mother-in-law likely knew these facts. They knew of appellee's mission to the ranch, and certainly knew, from all the circumstances in evidence, that Norvell was undertaking to sell him the ranch during the two days they spent there. They did nothing indicating any objection thereto, but, with this knowledge, saw him in frequent conferences with Rugeley and with appellee, and must be held to have acquiesced therein. If one holds another out as his agent in a certain capacity, or has knowingly permitted him to act as his agent, or where the circumstances are such as to raise the presumption of agency, the authority of the agent to act will be presumed in so far as the rights of third persons are concerned. See Cannal Coal Co. v. Luna, 144 S. W. 722.

[4] An agency may be established by circumstantial evidence. It is said in 31 Cyc. 1661(K): Circumstantial evidence is competent to establish the fact or extent of an agency. Where such evidence is resorted to for the purpose of establishing agency, all the facts and circumstances showing the relations of the parties, and throwing light upon the character of such relations, are admissible in evidence."

[5] But, even if we are mistaken in the view above expressed, still, we believe that appellants have ratified the acts of Norvell, with full knowledge of such fraudulent representations on his part, and have accepted the benefits of such trade, at least in part, and are therefore bound thereby. On December 6, 1911, appellants instituted suit against appellee in the district court of Matagorda county to enforce the collection of the $12,000 note given by him to them and to foreclose the deed of trust to secure same. Appellee answered in said suit setting up the fraud practically the same as alleged in his amend-ed' petition herein, and by cross-action asked for cancellation of said note and deed of trust. On August 2, 1911, and some four months prior to the time they filed this suit against him for recovery on the $12,000 note, appellee delivered to each of appellants a letter wherein he stated that, "since making said contract, I have been advised that said lands are not as represented to me, and am now preparing to make a personal investigation, with the view of determining whether I consider said lands to be as represented"; and on August 23d thereafter he gave written notice to the Bay City Bank & Trust Company, who held said papers for the benefit of appellants, that he would not comply with said contract to purchase said land for the reason that the quality, character, kind, and nature thereof were misrepresented to him, stating therein that he had notified appellants in person that he would not take the land, and demanding the return of the notes executed by him, as well as the deed of trust on the Crosby county land. Copies of such notice were likewise sent to appellants. This effort on the part of appellants to enforce collection of this note, with the knowledge of such fraud, was in fact a ratification of the acts of Norvell, and thereby made him their agent. See 31 Cyc. 1280 (4); American Natl. Bank v. Cruger, 91 Tex. 446, 44 S. W. 278; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335; Bounet v. Woodward, 2 U. C. 449.

In 31 Cyc., supra, it is said: "If the principal, with knowledge of the facts, brings suit against a third person, basing his right of action upon a contract made by an agent without authority, he thereby ratifies such contract, and the same rule applies if he attempts in any other way to enforce or take advantage of such contract, or if he sets it up by way of defense to a suit brought against him. In such case the principal must abide by the entire contract as it was made by the agent, and cannot avail himself of its benefits without also accepting its burdens." Hence such effort to collect said note was a ratification of the entire contract. It is said in 31 Cyc. 1257(F): "Although a principal has an election either to repudiate or ratify an unauthorized act of an agent on

his behalf, he cannot ratify in part or repudiate in part; he must either repudiate or ratify the whole transaction. He cannot ratify that part which is beneficial to himself and reject the remainder; with the benefits he must take the burdens." Such ratification was retroactive and related back and was equivalent to prior authority on the part of said agent. It is further said in 31 Cyc. 1283 (4), that: "Ratification relates back to the time when the unauthorized act was done and makes it as effective from that moment as though it had been originally authorized; and therefore, upon ratification, the parties to all intents and purposes stand in the same position as though the person assuming to act as agent had acted under authority previously conferred."

[6] Nor is it material, as contended by appellants under their fifth assignment, that they should have been granted a new trial because of the fact, as they contend, that they had no knowledge of fraudulent representations on the part of Norvell, and therefore should not be held responsible therefor. If Norvell was their agent, then they were responsible in law for any fraudulent representation he may have made to appellee whereby the latter was induced to purchase the land, irrespective of whether they had knowledge thereof or not. In Wright v. Calhoun, 19 Tex. 412, Justice Wheeler, in discussing a similar question says: "And although it were not proved that his principal, for whose benefit he made the purchase, had actual knowledge of his fraudulent acts and conduct, yet the relation of principal and agent affects him with notice of them and with all their consequences. Story on Agency, §§ 139, 140, 452; Story on Con. § 496; Henderson v. Railroad Co., 17 Tex. 560 [67 Am. Dec. 675]. Nothing is better settled than that the fraud of an authorized agent will invalidate a contract entered into by him in behalf of his principal. It is a general doctrine of law (says Judge Story) that the principal 'is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, and omissions of duty of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies respondeat superior.' Story on Agency, § 452. There can be no sounder doctrine of morals or law than that which forbids the principal to take a benefit from the fraudulent act or contract of his agent, to the injury of an innocent third person. It would indeed be a monstrous doctrine to hold that a principal may speculate upon and enjoy the fruits of the frauds of his authorized agent and incur no responsibility to the injured parties. It would enable one man, by employing the in-strumentality of an unprincipled agent, to cheat, defraud, and swindle others out of their property and turn them over to their recourse upon the worthless agent, while he (the principal) received and retained the fruits of the iniquitous bargains. Such a doctrine can have no sanction in morals or law." See Allen v. Garrison; Bank v. Cruger, supra; Halsell v. Musgrave, 5 Tex. Civ. App. 476, 24 S. W. 358; Mechem on Agency, § 775.

[7] During the trial appellee was permitted to offer, over appellants' objection, the declarations and statements of Norvell and Terrell with reference to the character, quality, and kind of the land as made to him by Norvell and Terrell, who claimed to act as the agents and representatives of the owners of said land, as well as other declarations tending to establish their agency for said owners. It is asserted that these declarations are not permissible to establish agency and were improperly admitted. There is no question that agency cannot be established by the declarations of the agent without first proving the agency; but, as we have held that the evidence established the agency, then it is equally as well settled that such testimony is admissible for the purposes for which it was offered in this case.

[8] It is also true that the acts and statements of an alleged agent, done and made at the time negotiations were pending for the sale of land belonging to others, are admissible in connection with the direct testimony of the acts and statements of the principal and the direct testimony establishing agency; especially is this true where the principals are present during the progress of the negotiations that eventuate in the sale. Such evidence, under such circumstances, may be regarded as res gestæ. See Texas Elevator & Compress Co. v. Mitchell, 7 Tex. Civ. App. 222, 28 S. W. 45. The facts of this case differentiate it from the case of Madeley v. Kellam, 135 S. W. 659, relied upon by appellants. The seventh and eighth assignments are therefore overruled.

[9] A memorandum of the contract of sale prepared by Norvell was introduced in evidence over appellants' objection. While it was never signed, yet we think it was admissible for the same reasons as above indicated. It was a circumstance going to show the agency of Norvell and tended to corroborate the evidence of appellee; no objection was made to said memorandum by appellants on the ground that it was stated therein that Norvell was the agent of appellants, but merely on the ground that, since there was a subsequent contract entered into between the parties, it alone should be looked to as having controlling effect. See Mechem on Agency, §§ 81, 83. For which reason we overrule the ninth assignment.

[10] The rulings of the court as to appel-

lants' exceptions to the petition, set out under the tenth, eleventh, twelfth, and thirteenth assignments of error, become immaterial in .view of the fact that we hold that the evidence was sufficient to warrant the cancellation of the contract. These assignments are therefore overruled. For similar reasons, no error is shown as complained of in the fourteenth, fifteenth, sixteenth and seventeenth assignments.

[11, 12] The court permitted appellee, over appellants' objection, to testify that he had written a letter to Norvell about the 1st of July, stating that he had ascertained that the land was not such as represented to him in that it was not first-class farming land; that water stood on it during the winter; that it was unfit for cultivation; and that he would not take it unless they could deliver to him at least 9,000 acres of first-class farming land, which did not overflow, requesting Norvell to inform appellants not to go to any further expense with reference to said contract. And likewise permitted appellee, over appellants' objection, to read in evidence Norvell's letter in reply thereto, the effect of which was to confirm his representations made to appellee with reference to the land. We do not think that any material error was committed thereby; first it appears that appellee retained no copy of said letter and had given appellants notice to produce the same, and therefore had the right to testify to its contents, provided the same was otherwise admissible. It disclosed prompt action on his part to disaffirm, in accordance with his contention, and was written for the purpose of notifying appellants that he would not take the land if the representations of Norvell proved untrue. Certainly the answer of Norvell in reply thereto could not injure appellants for the reason that the same was but in effect a repetition of the contention of appellants made upon the trial that the lands were in fact first-class farm lands and in every respect conformed to the representations of Norvell. Besides, the transaction had not been closed, and Norvell, who had acted as agent, was still interested therein. Under the circumstances, we cannot see how the introduction of this testimony was injurious to appellants, for which reason the eighteenth and nineteenth assignments are overruled.

[13, 14] Before appellee could be required to answer the hypothetical question put to him by appellants, it must embrace and be based upon all of the facts in evidence relating thereto; and, since the question propounded failed to do this in that it appeared that appellee had contracted for first-class farming land that did not overflow, it therefore became immaterial what the lands would have produced, since he had the right to refuse to take overflow lands, for which reason the twenty-second assignment is overruled.

We hold that the court did not err in submitting plaintiff's theory of the case to the jury, since there was ample evidence tending to support it. Therefore the twenty-eighth assignment, complaining of the second paragraph of the main charge, is overruled.

[15] As no recovery could be had in this case on the part of appellee, unless it was shown that Norvell and Terrell were the agents of appellants, and that they had made material misrepresentations as to the nature, character, and quality of the lands upon which appellee relied, it became immaterial that the court charged upon the subject of conspiracy to make such sale, as outlined in paragraph 3 of its main charge, for which reason the twenty-ninth assignment, urging error in said charge, is overruled.

We have carefully considered the remaining assignments of error and regard them as without merit, for which reason they are overruled.

Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.