COWBOY STATE BANK & TRUST CO. v. GUINN et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 15, 1913.)

1. CORPORATIONS (§ 121*) — TRANSFER OF STOCK—ACTIONS—ALLEGATIONS OF ANSWER —PARTIES TO CONTRACT.

The answer in an action on a note, defended on the ground that the note was given for bank stock which was sold under false representations that the purchaser would at once become a stockholder and that the stock would pay certain dividends, etc., alleging that the seller, who was plaintiff's president, "represented to J. O. G., defendant herein, who was to become a stockholder, that by securing his note with the signature of J. A. G. herein he could become a stockholder in the bank without paying cash for the stock as required by law," sufficiently alleged, in the absence of a special exception, that the stock was purchased by J. O. G. alone.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. § 121.*]

2. CORPORATIONS (§ 116*)—FAILURE OF CONSIDERATION.

If stock was sold transferable to the purchaser only upon payment of his note, the refusal to deliver the stock would not constitute a failure of consideration of the note unless the seller had received payment of the note.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 493, 494, 496; Dec. Dig. § 116.*]

3. BILLS AND NOTES (§ 494*)—ACTIONS—BURDEN OF PROOF — AFFIRMATIVE DEFENSES — FRAUD.

In an action upon a note defended on the ground that it was given for bank stock purchased under false representations, the burden was upon defendant to show the falsity of the alleged representations.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 494.*]

4. BANKS AND BANKING (§ 114*) — ACTS OF OFFICERS—LIABILITY OF CORPORATION.

The rule that a corporation, by accepting the benefit of the acts of its agent, also adopts the means by which he procures such benefit, though it had no knowledge thereof, would not apply to make a bank liable for false representations by its president in selling certain stock if the stock was then owned by him individually and not held by him for the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 277–280; Dec. Dig. § 114.*]

Appeal from District Court, Fisher County; John B. Thomas, Judge.

Action by the Cowboy State Bank & Trust Company against J. O. and J. A. Guinn. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Harry Tom King, of Abilene, John W. Woods, of Rotan, and W. Boyce, of Amarillo, for appellant. Higgins & Hamilton, of Snyder, and L. H. McCrea, of Roby, for appellees.

HALL, J. This is a suit instituted by appellant against appellees in the district court of Fisher county, upon a promissory note, payable to appellant, dated December 17, 1911, payable March 17, 1912, bearing interest at the rate of 10 per cent. per annum from maturity, with the usual stipulation for 10 per cent. attorneys' fees. The appellees answered by general and special demurrers, general denial, and pleaded failure of consideration. They further allege that Arlon B. Davis, the president of appellant corporation, fraudulently represented to them that the capital stock of appellant bank had been paying and would continue to pay semiannual dividends of 12 per cent. or 24 per cent. per annum, and that said bank, whose stock the defendants were purchasing and for which the note sued upon was given, would loan defendants $2,000 with which to pay for 20 shares, and that said loan would be made at the rate of 10 per cent. per annum and would be renewed from time to time, as long as defendants wanted it, without further security, and that, if no dividends were withdrawn by defendants as they accrued, the dividends on the stock would pay for the stock in four years and five months without further cost to defendants. That relying upon such representations they executed the original note on about the 17th day of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

August, 1910, of which the note sued upon is a renewal. It is further alleged that the said Davis represented to appellees that, at the moment they executed and delivered the first note, they would become stockholders in the bank, and their names would be entered on the register of the bank and be preserved in the vault for safe-keeping, and that it would not be necessary to issue stock as defendants would be stockholders by reason of their names being on the register. Appellees allege that they were not acquainted with business transactions in connection with corporations or any other business than farming and did not know that it was necessary that they have stock certificates as evidence of their purchase and did not know that they would receive no consideration whatever for the note they executed. They further allege that they had never received any certificates of stock and that on or about the 17th day of February, 1911, they executed a renewal note for the original note and interest in advance for six months and demanded their 12 per cent. dividend on the stock (as represented by plaintiff's agent would be due them), with which to pay interest on said notes, but were told by said Davis that the bank would declare a dividend a little later on, and that defendants would be notified thereof, but that no dividends were declared in favor of defendants and that they have never been stockholders. It is alleged that the officers of the bank had actual and constructive knowledge of the fact that said false and fraudulent representations were made by the said Davis and also that no consideration was ever paid to defendants or either of them for the execution of the note herein sued upon, nor any of the renewals thereof, and had notice that they were given for stock which was never received by defendants, and that no consideration was ever paid or promised to be paid plaintiff herein by said Davis to defendants, other than the promise of stock, and that plaintiff bank is not a bona fide purchaser for value of said note; that all the notes executed by defendant were directly to the bank and not to Davis, and that the bank made the renewals thereof until defendants demanded their stock, and that the bank could not deliver the stock to the defendants, and that the said Davis neither for himself nor for the bank could deliver such stock. Plaintiff, by supplemental petition, filed general and special demurrers to the answer, denied generally and specially all matters pleaded by the defendants except as to the execution of the original note and the renewal thereof and except as to facts admitted in the supplemental pleading. The supplemental petition alleged that the plaintiff was the holder for value of the note sued on without notice of any of the defensive matter pleaded by defendants; that if Davis made any fraudulent representations as alleged, or entered into any such agreement as is set out by defend-

ants, Davis was acting for himself in such matters and not for plaintiffs, and that he had no authority to act for plaintiffs in the sale of the stock, for at that time plaintiff had no capital stock for sale. There was a peremptory instruction in favor of appellees.

[1] Appellant insists, under its first assignment of error, that the court erred in instructing a verdict for appellees and should have instructed one for appellant for the reason that the appellees in their pleadings allege that they and each of them entered into a contract with the bank for the purchase of the stock when the undisputed evidence disclosed that the consideration of the original note and its renewals was the purchase price of certain stock bought by only one of the defendants, J. O. Guinn. This assignment must be overruled.

Appellee's answer does not raise the issue by allegations as clear and certain as it might have done, but the answer was not specially excepted to upon that ground. They do allege that Davis "represented to J. O. Guinn, defendant herein, who was to become a stockholder, that, by securing his note with the signature of J. A. Guinn, herein he could become a stockholder in the bank without paying cash for the stock as required by law." The answer was framed with the evident purpose of alleging contracts under the terms of which J. O. Guinn individually, as well as J. O. Guinn, joined by his brother, J. A. Guinn, became the purchasers of the stock and was drawn for the purpose of admitting proof of either state of facts. The pleader further alleges facts upon which a contract for the sale of stock owned either by Davis or by the bank might be proven. A perusal of the testimony of Davis and of appellees shows that the jury might have found a sale to either J. O. Guinn or to appellees jointly. Since the case must be reversed and remanded for another trial, it is not proper for us to further discuss the effect of the evidence introduced and bearing upon this issue. We shall not attempt to discuss the assignments in the order in which they are presented in the briefs. We are not informed by the record upon what theory of the case the court instructed the jury to return a verdict for appellees. It is true that appellees had never received any certificates of stock in consideration for their note, but in this connection we call attention to the letter of August 25, 1910, written by Davis to J. O. Guinn, and witnessed by W. L. Foy and J. A. Guinn, which is as follows: "This is to certify that I have sold you 20 shares of my stock in the Cowboy State Bank & Trust Company, transferable to you or your order upon the payment of your note of August 17th, for $2,352, to said bank, and maturing February 17, 1911, or any renewal or substitution thereof."

[2] If this letter expresses the agreement of the parties and is not to be modified by the contemporaneous parol understanding

contended for by appellees, to the effect that they should at once become stockholders and be entitled to the dividends due upon the stock, if any such agreement was made, then the refusal to deliver the stock did not constitute a failure of consideration for the note until the bank had received the amount thereof, and this is an issue which should have been submitted to the jury. If the court instructed the jury upon the theory that the note given for the stock was in violation of article 12, § 7, of the state Constitution, there was error in such instruction because, if, as contended by Davis, the stock belonged to him instead of to the bank, the note was not void. Appellees contend that because the note was given to the bank, and by reason of other evidence appearing in the record, which we shall not discuss, the note was absolutely void, and cite McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 96, and Mason v. First National Bank of Paint Rock, 156 S. W. 366. It appears from the record that the ownership of stock, whether in Davis or in the bank, was a sharply contested issue, and the evidence bearing upon it was sufficient to require the court to submit it to the jury.

[3] If the court gave the peremptory instruction upon the theory that the fraudulent representations alleged to have been made by Davis, to the effect that the stock had been accumulating profits, and that dividends had theretofore been declared thereon to the extent of 24 per cent. per annum, and that appellees would become stockholders immediately, and that such dividends would be applied to the payment of their stock, the court was not warranted in giving such instruction because the burden rested upon appellees to show the falsity of the alleged representations made by Davis, and we find no evidence in the record tending to prove that the stock had not been earning 24 per cent. per annum. Appellant contends that it was not a party to the contract between Davis and the appellees for the sale of the stock and was in fact an innocent purchaser for value of the note sued upon or of the one of which it is a renewal. It is undisputed that Davis was the president of the bank; that Foy was the cashier of the bank at the time the contract was entered into and was present when the contract was made. It is further shown that immediately upon the execution of the note Davis delivered the same to Foy, with instructions to credit his (Davis') account with $2,000 and make the proper entry on the note account of the bank. It further appears that Foy was made the custodian of the 20 shares of stock which appellees were afterwards to acquire, and Davis himself testified that he had discussed the transaction both before and after the execution of the contract with Foy and the directors.

In First National Bank of Mason v. Ledbetter, 34 S. W. 1042, it is said: "The cashier of a national bank is the executive officer of the bank, and his acts, done in the ordinary course of business, bind the bank, and notice to him is notice to the bank."

In American National Bank v. Cruger, 91 Tex. 446, 44 S. W. 278, Denman, Justice, says: "The legal proposition relied upon is stated in Paley's Prin. & Ag. 324, thus: 'Contracts made for the benefit of another but with his privity or direction may be rejected or affirmed, at his election. But by making the election to affirm it he adopts the agency altogether, as well that which is detrimental as that which is for his benefit. But, in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by any conduct of his agent which would have had that effect if proceeding from himself. Every species of fraud, misrepresentation, or concealment therefor, in the agent, affects the principal's right to recover.' Under the principle here announced, if Hunter and Miss Lottie Cruger, without authority for the bank, undertook in its behalf to secure the shortage by procuring the note of P. B. Cruger and Miss Fannie Cruger, the acceptance of the note by the bank with the knowledge that they had thus assumed to act for it would be a ratification or adoption of every assumed agency, and the bank would be chargeable with the fraudulent representations made by them to Miss Fannie Cruger to the same extent as if they had been in fact its agents at the time of making such representations. This is upon the plain proposition that the subsequent ratification or adoption would relate back so as to make them agents to the same extent as if they had been previously appointed." Judge Denman, after discussing the facts, uses this further language: "Thompson, in his Commentaries on Corporations (sect. 6324), after quoting with approval the above language from Paley on Principal and Agent, recognized the distinction we have above made in the following language: 'It is submitted, however, that this principle, properly understood, is not that a person or corporation cannot retain an advantage secured by the fraud of * * * its agent; that is, by the fraud of one who has acted for it with whom it is in privity, or whose unauthorized acts, done for its benefit, it has adopted. There must be a relation of agency, arising either out of antecedent authorization or subsequent adoption, or at least a privity between the wrongdoer and the person or corporation receiving the benefit. Such a privity may arise by relation or by an adoption by the corporation of the act of the person who has thus acted for it, provided the corporation have knowledge of the means by which he secured the contract, where the person so acting for it was, when he so acted, a stranger to it. But if the person so acting was, when he so acted, the agent of the corporation, the corporation, by accepting the benefit of his act, adopts also the means by which

he procured it, although it may have had no knowledge as to what these means were." Allen v. Garrison, 92 Tex. 122, 50 S. W. 335; City National Bank v. Martin, 70 Tex. 643, 8 S. W. 507, 8 Am. St. Rep. 632.

[4] This rule, however does not apply if the stock was owned by Davis and not by the bank, but the rule announced in the case of Reeves v. McCracken, 103 Tex. 416, 128 S. W. 895, would control, since it was not shown that Foy was a party to the alleged misrepresentations of Davis. If, however, as intimated in Davis' letter of February 24, 1912, the stock was only held in his name for prudential reasons, and the jury should so conclude, then the principles announced in Bank v. Cruger, supra, should govern in the disposition of the case.

The judgment is reversed, and the cause remanded.