## LOCKNEY STATE BANK v. DAMRON.
### (No. 829.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 23, 1915.)

1. PRINCIPAL AND AGENT ⬤⟲171 — UNAUTHORIZED ACTS—ACCEPTANCE OF BENEFITS.

A person or corporation cannot retain an advantage secured by fraud of one of its agents and accept the benefits of his act, without also adopting the means by which the advantage was procured, though the principal had no knowledge at the time what those means were.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 644–655; Dec. Dig. ⬤⟲171.]

2. CANCELLATION OF INSTRUMENTS ⬤⟲47 — GROUNDS FOR DENIAL OF RELIEF—FRAUD BY PLAINTIFF.

A woman suing for the cancellation of a note for $3,300 given to a bank, who at the time it was signed was about 70 years old, ignorant, uneducated, and practically unable to read and write, testified that the cashier of the bank, who accompanied her grandson to her home to obtain her signature to the note, represented that it was for $1,700; that he had also signed the note; that if she would sign it he would stand between her and all danger; that she had confidence in him, knew his position as cashier, and thought he was reliable and possessed property; that she understood he was representing the bank; and that she told them when she signed the note that she would not pay it, and they took it with the understand-

ing that she was not to pay it. *Held* that, assuming that an agreement that she would not be legally bound as a maker of the note would be fraudulent as to the bank and preclude equitable relief, the testimony was open to the construction that she understood that she was not to pay the note because of the cashier's agreement and representations that he would stand between her and all danger, in connection with her belief in his solvency, and, if such was the understanding, the contract was not fraudulent as to the bank, especially as, had it not been for the cashier's fraudulent representations, her obligation to the bank would not have been affected by this agreement, and the bank could not have been injured thereby.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 102, 103; Dec. Dig. ☜47.]

3. EVIDENCE ☜441 — PAROL EVIDENCE TO VARY WRITING.

The terms of a promissory note are conclusive of the contract, and cannot be changed by parol evidence that the note was executed with an understanding between the parties that it was never to be paid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ☜441.]

4. BILLS AND NOTES ☜103 — VALIDITY — FRAUD.

That the cashier of a bank to which a woman 70 years old, ignorant, uneducated, and practically unable to read and write, executed a note for $3,300, represented to her that it was for $1,700, that he had also signed the note, and that if she would sign it he would stand between her and all danger, constituted sufficient grounds for the cancellation of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 233–240; Dec. Dig. ☜ 103.]

Appeal from District Court, Motley County; Jo A. P. Dickson, Judge.

Suit by Mrs. S. A. Damron against the Lockney State Bank. Decree in favor of plaintiff, and defendant appeals. Affirmed.

Crudgington & Works, of Amarillo, for appellant. T. T. Bouldin, of Matador, for appellee.

HENDRICKS, J. The appellee, Mrs. S. A. Damron, instituted this suit against the appellant, the Lockney State Bank, for the purpose of canceling a note on its face for the sum of $3,300, which at the time of the institution of the suit had not matured. Mrs. Damron, who signed the note, with her mark as signature, at the time was about 70 years of age, ignorant, uneducated, and practically unable to read and write. At the time of the execution of the note D. F. Jones, the grandson of Mrs. Damron, was indebted to the Lockney State Bank, and, with Garrison, cashier of the bank, visited the home of Mrs. Damron, several miles in the country, for the purpose of obtaining the signature of his grandmother upon the particular note. Mrs. Damron testified that antecedent to the execution of the note Mr. Garrison, the cashier of the bank, represented to her that the note was for $1,700, and that he had also signed the note, and that if she would sign

it he would stand between her and all danger, and that if such representations had not been made by Mr. Garrison she would not have executed the paper, that they (evidently meaning Jones and Garrison) represented to her that this was an extension of another note, and that they simply wanted a little longer time upon the obligation and had plenty of cattle to settle the same. She said that she had confidence in Mr. Garrison, knew the position that he held in the bank at Lockney as cashier, and thought he was reliable and possessed of some property, that she understood that Mr. Garrison was representing the bank, and that she signed the note in order that Mr. Garrison could get the amount of money represented by the note from the bank, and further testified:

"I told them when I signed it [the note] that I would not pay it at all, and they took it with that understanding—that I was not to pay for it."

The trial court, without the assistance of a jury, canceled the note, and the assignment which we will discuss is one, in effect, that, Mrs. Damron having testified that she had an understanding that she was not to pay the note when they took it, and knowing that said note was being executed for the purpose of securing money from the bank for Garrison, she was guilty of such fraud as to preclude a recovery. The authorities principally cited to sustain this view are Jines v. Astle, 170 S. W. 1081,. Rushing v. Bank, 162 S. W. 469, and Hawkins v. Bank, 175 S. W. 166, with the additional case of Cotton v. Rand, 93 Tex. 7, 51 S. W. 842, 53 S. W. 343, decided by the Supreme Court; the first three cases having been decided by this court.

Appellant also, as a subsidiary proposition under the above assignment, contends that Garrison having an interest in the appellant bank, that no representations or fraud of Garrison could be imputed to the bank.

[1] There may be a phase of this case that Garrison, reckoning it upon the representations he made to Mrs. Damron, if he informed her, and she so believed, that this was his note to the bank, and he was individually obtaining the money, such antagonism of interest, if it were true, might exist. However, in passing upon appellant's secondary proposition, there exists the applicable principle that a person or a corporation cannot retain an advantage secured by fraud of one of its agents and accept the benefits of his act without also adopting the means by which the advantage was procured, although the principal may have had no knowledge at the time what those means were. American Nat. Bank v. Cruger, 91 Tex. 446, 44 S. W. 278; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335; Cowboy State Bank & Trust Co. v. Guinn, 160 S. W. 1105; Commonwealth Bonding & Casualty Co. v. Bomar, 169 S. W. 1063.

[2] Assuming argumentatively only that

an agreement, as construed by appellant to have been made in this case, is one the tendency of which is to permit the perpetration of a fraud as to preclude equitable consideration of rights by a participant, however, we think, resolving the testimony presumptively as the trial court resolved it, and the transaction, considering the evidence as a whole, that the authorities cited and the principle attempted to be held applicable are not pertinent. Appellant's construction and theory is, as we view it, that Mrs. Damron agreed with Garrison, and Garrison with her, that she would not be bound, in so far as any legal obligation is concerned, as a maker of the note. Such a construction is deducible from the testimony. However, there is another construction that Mrs. Damron understood that she was not to pay said note on account of the agreement and representations by Garrison with her belief in his solvency that he would stand between her and all danger upon the obligation, and for that reason she would not pay it.

"It is a well-established rule of construction that language in a contract which is susceptible of two constructions, one of which would render the contract illegal, and the other would make it lawful, that contract which would conform the contract to the law must be adopted." Foard County v. Sandifer, 105 Tex. 424, 151 S. W. 524.

Chief Justice Brown also said in that case, quoting from Clark on Contracts:

"Where a particular word, or the contract as a whole, is susceptible of two meanings, one of which will render the contract valid, and the other of which will render it invalid, the former will be adopted so as to uphold the contract."

It is clear to us that, if Garrison agreed with Mrs. Damron that she would not have to pay the note, on account of the assumption by him, as between them, of the whole liability for the paper, such contract had not a fraudulent tendency, nor, as far as this record suggests, would violate any rule of public policy to the extent that the same would be void, and constitute fraud upon the bank.

[3] Again, as presented in this record, could such a contract operate as a fraud upon the Lockney State Bank? The terms of a promissory note are conclusive of the contract and cannot be changed by parol evidence that the note was executed with an understanding between the parties that it was never to be paid. Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Roundtree v. Gilroy, 57 Tex. 176, 180; Self v. King, 28 Tex. 552, 553; Bailey v. Rockwall County Nat. Bank (Civ. App.) 61 S. W. 530, 531.

If it were not for fraudulent representations Mrs. Damron could not impeach this note upon the character of agreement which appellant claims was made. Her obligation to the bank would be unequivocal, and stripped of the fraud that permits the woman to cancel the note, the bank could not have

been injured in law. If the representations had not been made, the mere agreement, if it existed as the appellant construes it, that she was not to be bound upon the note, would be unavailing as to deprive the bank of any rights whatever in law. If so, how could such contract have a tendency to operate as a fraud in law upon the bank? Without deciding it upon the consideration last suggested, we think, upon an interpretation of the record, susceptible of two meanings, and resolving it presumably as the trial court construed it, the assignment should be overruled. Other assignments we think unnecessary to discuss and are overruled.

[4] The trial court resolved the testimony as to representations of Garrison against the bank which constitute sufficient grounds for the cancellation. Stacy v. Ross, 27 Tex. 3, 84 Am. Dec. 604.

Affirmed.