**VOGEL** et ux. v. ZIPP et al.

No. 8148.

Court of Civil Appeals of Texas. Austin.

Jan. 8, 1936.

Rehearing Denied Jan. 22, 1936.

Schleyer & Luckett, of New Braunfels, for appellants.

Frank B. Voigt and J. R. Fuchs, both of New Braunfels, for appellees.

BLAIR, Justice.

Appellants, Raymond S. Vogel and his wife, Valeska Vogel, sued appellees Herman Zipp, New Braunfels State Bank, and Guaranty State Bank to cancel a quitclaim deed executed by the Vogels to Zipp, and a deed of trust lien executed by Zipp to New Braunfels State Bank, both instruments being dated December 4, 1926, and covering an undivided one-fourth interest in lot No. 48, block 22, in New Braunfels; and the lien purporting to secure a $10,000 note executed by Zipp to the New Braunfels State Bank on December 3, 1926. Zipp executed a deed of trust to the said bank on July 11, 1928, and another one on April 10, 1931, each extending and renewing the lien on the property in controversy. The Guaranty State Bank acquired its rights in the premises as successor of the New Braunfels State Bank under a consolidation agreement dated May 21, 1932.

Prior to, at the time of, and continuously since, the execution of the quitclaim deed to Zipp, the Vogels occupied and claimed the property as their homestead. Prior to, and at the time of, the execution of the quitclaim deed by the Vogels and the deed of trust lien by Zipp to the bank, he was the president, a director, and the chairman of the board of directors of the New Braunfels State Bank, and continuously thereafter until the consolidation, merger, and taking over of said bank by the Guaranty State Bank. Prior to, and on December 1, 1926, and continuously thereafter, Zipp was engaged as a cotton buyer, and carried his cotton account with the New Braunfels State Bank, which account on the date last mentioned was overdrawn in the sum of approximately $12,000. This loan or cotton margin account had been criticized by a state bank examiner, who had required that additional collateral security be put up for the indebtedness. Officials of the bank, particularly R. E. Kloepper, the cashier, had "pressed" Zipp to provide additional security for his indebtedness, and on December 3, 1926, Zipp executed and delivered his note to the bank for $10,000 covering

said indebtedness. Prior to this last-mentioned date, and for several years thereafter, Zipp and appellant Raymond Vogel were partners in the cotton business, under an agreement whereby Zipp furnished the money and Vogel kept the books and transacted part of the business; they sharing the profits and paying the losses on an equal basis. After executing the quitclaim deed, the Vogels remained in possession of the property, using it as their homestead, renting a part of it and collecting and using the rents, and paying the taxes on the property. No claim was ever made by Zipp under the deed to him, nor by the New Braunfels State Bank on its deed of trust lien until after the consolidation and merger with the Guaranty State Bank, when its new officers claimed the lien to be valid as to said latter bank. Whereupon appellants instituted this suit, alleging and testifying in substance that on or about December 4, 1926, Zipp told them of his indebtedness to the New Braunfels State Bank and of the requirement imposed upon him and the bank by the state bank examiner to provide additional security for his indebtedness. Zipp proposed that appellants assist him in putting up the additional security; and other officials of the bank likewise requested appellants to help Zipp put up additional security; and the bank through its president, Zipp, and its cashier, Kloepper, then and there agreed with appellants that they should execute the conveyance of the property in suit to Zipp, and that he in turn should execute the deed of trust lien to the bank, upon the express condition that appellants would continue to live upon the property, and that the bank would release the lien when appellants desired it. The conveyance was made solely for the accommodation of Zipp and the bank. Appellants further alleged and testified that they reposed special faith and confidence in Zipp as a friend and as an officer of the bank, and that, in reliance upon the promises and assurances of Zipp and other officials of the bank, they executed the quitclaim deed to Zipp, which Vogel filed for record on December 7, 1926.

Appellee Zipp answered and testified in substance that he purchased the property, paying the recited consideration of $6,000, which amount represented an agreed settlement of Vogel's indebtedness to him for Vogel's one-half interest in the partnership cotton business, or that such amount represented the portion of the losses of the business for which Vogel was liable to him.

670

The Guaranty State Bank answered by a plea of estoppel of appellants to deny the validity of their deed to Zipp, claiming that it had no notice of the homestead claim nor of any simulated transfer as between Zipp and appellants; and that it was an innocent purchaser of the note and liens under the various renewal and extension agreements.

The one special issue submitted to the jury reads as follows: "Do you find from a preponderance of the evidence that the property in controversy was transferred by Raymond S. Vogel and his wife Valeska Vogel, to Herman Zipp, for the purpose of putting same up as collateral security with the New Braunfels State Bank? Answer 'Yes' or 'No,' as you may find the facts to be."

The jury answered the issue "Yes." All parties moved for judgment, based either on the jury's finding or on the ground that the undisputed evidence sustained their respective claims. The trial court rendered judgment canceling the quitclaim deed from the Vogels to Zipp; but sustained the pleas of innocent purchaser and estoppel by the Guaranty State Bank, and accordingly rendered judgment foreclosing the lien in satisfaction of the indebtedness secured by it.

■ A controversy arises as to whether the answer of the jury to the issue submitted concluded only the rights between appellants and appellee Zipp. Appellees contend that it only concluded the rights between Zipp as an individual and the appellants. Obviously, the issue is not so limited by the language used. The record discloses, however, that the issue was probably intended to be limited to the transactions between appellants and Zipp, but not to Zipp as an individual as distinguished from his acts as agent of the bank; he being its president, a director and chairman of the board of directors at the time of the simulated conveyance by appellants to him, which was made for the purpose of enabling him to put the property up as collateral security with the bank for his then existing debt to the bank. No issue was submitted to the jury as to whether any other official of the New Braunfels State Bank had actual notice of the simulated conveyance to Zipp. Appellant's testimony would have fully supported a finding that Kloepper, the cashier, knew of, and assisted in securing, the simulated conveyance. The

jury's findings that the conveyance was a simulated or pretended one as between appellant and Zipp, and that the conveyance was made for the purpose of enabling Zipp to put the property up as collateral security to the bank, were fully supported by the evidence. Appellants contend, however, that, in view of these jury findings, both banks had notice of the simulated conveyance of the homestead as a matter of law, for the following reasons:

(1) That, since the deed of trust lien was given to secure the antecedent or pre-existing debt of Zipp to the New Braunfels State Bank, such bank failed to establish its claim of bona fide purchaser for value and without notice as against defense of homestead, and that, since appellee bank acquired its rights by merger and consolidation with the said New Braunfels State Bank, it was not entitled to the protection of an innocent purchaser for value and without notice of the simulated conveyance of the homestead property.

(2) That, since at the time of the execution of the simulated deed of conveyance by appellants to Zipp and the deed of trust lien by Zipp to the bank he was the president, a director, and the chairman of the board of directors of said New Braunfels State Bank to which the deed of trust was made, said bank was charged with the knowledge of Zipp, its agent, as to the simulated or pretended conveyance of the homestead property; and that, since appellee bank acquired its rights by merger and consolidation with the New Braunfels State Bank, it merely stood in the shoes of the bank with which it consolidated.

■ The law as to the rights of one holding under a homestead claimant's grantee is as follows: "Where it appears that the conveyance by the claimant was a simulated or pretended one, the claim of homestead must be sustained against one who holds under the claimant's grantee, unless he shows that he purchased without knowledge or notice of the facts giving rise to the claim of homestead and paid value to his grantor. That is to say, the remote purchaser must show facts which give rise to estoppel on the part of the claimant." 22 Tex.Jur. 162 and 163, and cases cited in footnotes 2 to 4.

This rule is referable to the constitutional provision, which declares that "all pretended sales of the homestead involving any

condition of defeasance shall be void." Constitution, art. 16, § 50.

■ The property in controversy was the homestead of appellants, and its conveyance to Zipp was simulated and made for the purpose of putting it up as collateral security for Zipp's pre-existing debt to the bank. The bank did not pay value, because the deed of trust was given by Zipp to secure his pre-existing debt to the bank. Appellee bank acquired all its rights by merger and consolidation with the New Braunfels State Bank, to which the deed of trust was made.

■ It is settled law that, when the consideration for a deed or for a deed of trust lien is a pre-existing debt, it will not support the claim of a bona fide purchaser for value without notice, as against the claim that property so conveyed is the homestead. Steffian v. Bank, 69 Tex. 513, 6 S.W. 823; Swann v. Rotan State Bank, 115 Tex. 425, 282 S.W. 789; Walter Connally & Co. v. Gaston (Tex.Civ.App.) 295 S.W. 953.

■ The law is also settled that a bank succeeding to the rights of another bank by consolidation and merger is not entitled to the protection of an innocent purchaser for value in due course without notice. "The position of a bank, consolidating with another and acquiring notes from it, is that it is not an innocent purchaser for value; it steps into the shoes of the bank with which it consolidates." 6 Tex. Jur. 230, § 173; Commercial State Bank v. Ellington (Tex.Com.App.) 24 S.W.(2d) 359; Farmers' & Merchants' State Bank & Trust Co. v. Cole (Tex.Civ.App.) 220 S.W. 354 (writ refused).

■■ Nor does the fact that the deed of trust lien was subsequently twice renewed improve the position of either bank. The subsequent renewal did not add any valuable consideration, nor right of any character, for the deed of trust as against the homestead claim. The first-named bank did not pay value, because the deed of trust was given to secure a pre-existing debt, and the second bank merely stepped into the shoes of the first bank under the merger agreement. Appellants continued their occupancy of the property as homestead, which possession of the property was, as to any one dealing with it, constructive knowledge of the right of the homestead possessor. Williams v. Daniels (Tex.Civ.App.) 4 S.W.(2d) 189 (writ refused); Mason v. Olds (Tex.Civ.App.) 198 S.W. 1040 (writ refused).

■ Nor is appellee bank in a position to assert estoppel as against the homestead claim because the simulated deed of conveyance from appellants to Zipp was delivered and recorded. Both banks under the rule above stated had notice of the fact that the deed of trust was given to secure an antecedent or pre-existing debt of Zipp to the first-named bank, and this fact was recited in the deed of trust. Therefore both banks come within the rule that any character of the conveyance of the homestead, in consideration of or to secure a pre-existing debt, will not support the claim of innocent purchaser for value and without notice, and especially is this the rule where, as in the instant case, the homestead claimant remained in possession of the premises and continued to use and occupy same as the homestead.

■ The jury found that as between Zipp and appellants the conveyance was a simulated or pretended one, and was made for the purpose of putting the property up as collateral security for Zipp's debt to the bank. Zipp was the president, a director, and chairman of the board of directors of the bank, and his knowledge or notice that the conveyance of the homestead was simulated was imputed to the bank under the undisputed facts. Both Zipp and the bank contend, however, that, since the interest of Zipp, the president of the bank, was personal and adverse to the bank in the conveyance of the property by appellants to him, his knowledge or notice that the conveyance was simulated was not imputed to the bank; and that, because other officers handled the transaction for the bank, Zipp did not come within the rule of sole representative of the bank in the transaction. Manifestly, the interest of Zipp was not wholly personal nor adverse to the bank. The simulated conveyance was made for the benefit of the bank and to give it additional security for Zipp's pre-existing debt to it. The bank had already renewed the debt when the security was given. It was not dissatisfied with the security furnished by Zipp, but Zipp and the other officials and directors were simply trying to meet the criticism of a state bank examiner, who had requested additional security for Zipp's loan or cotton account, which was overdrawn and amounted to some $12,000 at the time the indebtedness was renewed by the execution of the note of December 3, 1926.

Zipp and the bank have made a joint defense to this suit, and are represented by the same counsel. Their interests under the facts were not adverse, but mutual.

The rule is settled in this state. that, "where an officer of a corporation deals with and for the corporation in the same transaction, it must be assumed that his knowledge as an agent is coextensive with his knowledge as an individual." 2 Tex.Jur. 574. Especially is this the rule where the transaction is for the benefit of both the officer or agent and the corporation. Goldstein v. Union Nat. Bank, 109 Tex. 555, 213 S.W. 584; Teagarden v. Lumber Co., 105 Tex. 616, 154 S.W. 973; Mays v. First State Bank (Tex.Com.App.) 247 S.W. 845, 846; Traders' Nat. Bank v. Smith (Tex.Civ.App.) 22 S.W. 1056. The Supreme Court has recognized this principle of participation of benefits as the more reasonable and equitable foundation of the rule of imputed notice as compared to the arbitrary doctrine of the identity of principal and agent as applied to the question of imputed notice. Irvine v. Grady, 85 Tex. 120, 19 S.W. 1028. Under this rule, the reason for the doctrine that notice to the agent is notice to the principal is that it is the agent's duty to communicate his knowledge to the principal, and he is therefore "irresistibly presumed" to have communicated it. Irvine v. Grady, supra. See, also, Wilcox v. Dillard (Tex.Civ.App.) 3 S.W.(2d) 507; Lockney State Bank v. Damron (Tex.Civ.App.) 179 S.W. 552, 553; and Hawkins v. First Nat. Bank (Tex.Civ. App.) 175 S.W. 163, which discuss and show the distinction between the rule that, where the knowledge of the agent sought to be imputed to the principal was acquired by the agent while acting solely for himself and adversely to his principal, and not in the transaction of the principal's business, and in the rule that, where the agent acts both for himself and his principal, the principal is charged with notice under the rule that a corporation cannot retain an advantage secured by the fraud of one of its agents, nor accept the benefits of his acts, without also adopting the means by which the advantage was procured, although the principal may have had no knowledge at the time what those means were.

The appellee banks also had notice of the simulated conveyance of the property under the "sole representative" doctrine or rule. By their proof appellees carefully established without controversy the fact that Zipp was the sole representative of the bank in securing the conveyance of the homestead property to him. They presented the testimony of several of the officials of each of the banks involved, and each of them denied any knowledge of the transaction. While they admitted that the cashier, Kloepper, dealt with President Zipp with reference to Zipp's indebtedness to the bank, all witnesses strongly disclaimed any participation whatever in the transaction between Zipp and appellants. The purpose of this transaction as found by the jury was to enable Zipp to put the property up with the bank as collateral security for his then-existing debt to the bank. Likewise the testimony with respect to the homestead character of the property was carefully isolated, and any knowledge of any fact relating thereto was confined strictly to Zipp. Each other officer or agent of the bank testified that he knew nothing concerning the homestead property. Thus appellees carefully proved facts which brought them within the sole representative rule, which rule is predicated upon the ground that, "when a principal has consummated a transaction, in whole or in part, through an agent, it is contrary to equity and good conscience that he should be permitted to avail himself of the benefits of the agent's participation without becoming responsible as well for his agent's knowledge as for his agent's acts." Mays v. State Bank (Tex.Com.App.) 247 S.W. 845, 846.

The judgment of the trial court refusing to cancel the deed of trust lien and foreclosing it is reversed, and judgment is here rendered for appellants against all parties appellee for the cancellation of the deed of trust lien executed by Zipp to the bank, and for all costs of this suit.

Reversed and rendered.