**WOODS v. TOPLETZ et al.**

No. 12525.

Court of Civil Appeals of Texas. Dallas.

March 4, 1939.

Rehearing Denied April 1, 1939.

Lyle Saxon, J. E. Burkholder, and Harvey C. Ford, all of Dallas, for appellant.

George T. Burgess, of Dallas, for appellees.

YOUNG, Justice.

The Court, on its own motion, withdraws its former opinion herein, of date January 14, 1939, and in lieu thereof substitutes the following as our opinion in this case; the judgment as heretofore rendered in the matter of reversal and remand not being disturbed, Mr. Chief Justice BOND dissenting. This is without prejudice to appellees' right to amend their motion for rehearing (now on file), in view of the above action of the Court.

Susie Woods, a widow, has prosecuted this appeal following an adverse judgment of the trial court by way of peremptory instruction, S. Topletz and M. Saffir being defendants and appellees. A summary of plaintiff's second amended petition on which the case was tried (March 30, 1937) discloses that she was the owner of certain lots on Thomas and Thompson Streets, Dallas, on May 24, 1927, when she consummated loans thereon from appellees, thereby financing the erection of a two-story brick building, comprising four 5-room apartments; the cottage already on the premises being improved as a part of the loan agreement. First and second lien notes secured by separate deeds of trust, evidenced the transaction. These consisted of an $8,500 note payable five years after date to order of S. Topletz with eight per cent. interest payable semi-annually; a second lien note in the sum of $5,872.62, payable to order of M. Saffir in monthly installments of $150 each, beginning six months after July 1, 1927, until paid bearing eight per cent. interest, the amounts due each month prior to said date being somewhat larger. Said monthly payments were to be deposited regularly as stipulated with the holder of the installment note, and applied first to the interest as it accrued on the $8,500 note, then to interest on such second note, the balance to the principal thereof. L. Topletz was trustee in both deeds of trust, and policies of fire and tornado insurance were taken out and held by said Topletz and Saffir as additional and collateral security under the provisions of the said instruments. In connection with the policies of fire insurance just mentioned, plaintiff alleged that she at no time knew the amounts thereof nor the insuring companies, but that under the terms of same, a loss clause was payable to S. Topletz as holder of the $8,500 note, who had an arrangement with M. Saffir, the second lien holder, as to how the policies should be handled in case of fire. The premises in question sustained a material fire damage on May 7, 1932, according to plaintiff's pleading, under which an adjustment of $3,704.81 was made with the insurance company, and an accounting was asked in relation thereto; plaintiff claiming that the necessary repairs in rehabilitating the property were $1,002.60, and after further deduction of taxes and interest on both notes, a substantial amount remained from this loss to apply on the aforesaid indebtedness. Plaintiff further alleged the occurrence of a second fire on May 30, 1935, at a time when the fire policies were held by defendants Topletz and Saffir, and the notes of defendants were in good standing, the payments having been met, as plaintiff claims, in accord with the agreement and understanding of the parties; further pleading a destruction of the building and contents to such an extent that she could not rent the same, so as to get sufficient income therefrom, pending reconstruction, for continuing her payments on the notes, which the defendants understood; that she secured figures as to cost of repairs, the estimate being $1,200; and that a few days thereafter she called

upon defendants and reported the amount of said estimate, requesting permission to repair the premises, which was refused by defendants on the ground that they desired to collect the insurance and make the repairs themselves. Allegations were further that some time later the adjustment was effected as to the loss, and after drafts aggregating $4,195.01, payable to plaintiff, defendants, and another, had been received, .plaintiff refused to endorse same until defendants had agreed to the expenditure of not more than $1,200 in repairing the property, the balance of the $4,195.01 to be applied to the notes and interest, after deducting adjustment cost; that plaintiff later discovered defendants were in a conspiracy to appropriate the whole of said fire proceeds to their respective notes, placing plaintiff in default as to said debts, with her property in a burned condition, thereby depriving her of any rents and revenues from which to make current payments; and that defendants breached their said agreement to repair and to apply the balance of the insurance; but, on the other hand, credited the whole of the $4,195.01 to their notes and then declared the balance of same in default and subject to foreclosure. Plaintiff pleaded a deed of trust sale under the $8,500 first lien note owned by Topletz, a purchase of the property described therein by the latter, a sequestration proceeding by S. Topletz whereby plaintiff was ejected, a replevy thereof by defendants, who have since possessed, repaired and rented the premises, diverting all rents and revenues to their own use and benefit. Plaintiff prayed in said amended pleading and cross action for a restoration of the property, an accounting and application of the insurance money according to the alleged agreement; and for damages on said sequestration bond, both actual and exemplary, against appellees and sureties as a result of her ejectment and loss of property.

By way of answer to the merits of the above stated cause, defendants Topletz and Saffir pleaded a written accord and settlement as to the fire of May, 1932, admitting the history of the two notes described by plaintiff; Topletz averring the extension and renewal of the $8,500 first lien to May 24, 1935; and that prior to said maturity date and continuously thereafter, he had advised plaintiff that said note must be paid when due and would not be extended, at all times insisting on its payment. Defendant Saffir similarly pleaded a defaulted condition of the second lien note on May 24,

1935; and that at the time of the fire (May 30, 1935), both obligations being past due, these defendants, as they had the legal right to do, applied the fire insurance proceeds as follows: Jack Barr, adjuster employed to adjust the loss, $209.75; back taxes and insurance advanced by Topletz and Saffir, $514.88; interest on the first lien note to July 11, 1935, $132.90; interest on the second lien note to July 1, 1935, $81.84; to principal of first lien, $1,246.35; to balance of principal second lien, $2,009.25. After above credit of interest on the Topletz $8,500 note, the allegations of this defendant were that the principal of same on July 11, 1935, was $7,253.65; reciting a demand upon plaintiff and refusal by her to pay same, and that the deed of trust sale resulted. Defendants claimed the legal right to make the above application of funds by reason of the full coverage mortgage clause in the policies of insurance, all indebtedness being past due; Topletz further setting forth a cross action for title and possession; and in the alternative, both defendants ask for judgment in amount of their debts and foreclosure, etc. Defendant Topletz set up in trial amendment the rebuilding of the premises after May 30, 1935, at a cost of $3,000, praying that if the foreclosure sale be set aside, the proceeds of the fire be not credited upon the notes until after deduction of the above cost of repairs and other items.

In connection with the evidence introduced on behalf of plaintiff, she testified that in 1927, when the apartments were completed and turned over to her, defendants agreed to collect the rents and apply same to the notes; and after the first fire in 1932, when she began rent collections, that defendants never demanded greater payments from her than she could collect and turn over to them from rents. It was undisputed that $8.75 was paid to and accepted by S. Topletz on May 27, 1935, as a deposit on first lien interest, which was three days after the note's maturity date; nothing then being said by said noteholder about his debt being past due, or for a payment of same in full; plaintiff stating that Mr. Topletz merely asked for more rents, which were promised in a few days when the tenants paid. It also appears that plaintiff had paid during May, 1935, the sum of $22.50 on the principal of the second note, the balance of the Saffir note on May 15 being $2,524.11; also, her testimony was that appellees occupied the same office, Saffir doing the field work, L. Topletz the bookkeeping

and S. Topletz furnishing the money. Her further testimony disclosed that after the fire on May 30 and while adjustment of loss was in process, she had estimates made of repair costs and determined that $1,200 would be sufficient to reconstruct the premises; and when drafts for the insurance money of $4,195.01 came in, payable to all interested parties, that she refused to endorse them unless that amount of the funds be paid to her for such repairs; the balance to be applied on the loan after adjustment costs. Plaintiff's version of the conversations as to this, and leading up to signing the drafts, should here be quoted. She testified:

"Q. What did you do after you had that estimate made? Did you have any conversation at all with Mr. S. Topletz and Levi Topletz? A. I had a conference with Mr. Levi and S. Topletz both; Mr. Topletz, Levi, I asked—I was talking to him all the time I was up there, I went every day, and I told Mr. Levi I could get the house repaired back for $1200.00, and he said if I didn't let Mr. Saffir repair the house then they would foreclose on me, and I told him * * * that was Mr. L. Topletz. I told him that I would get somebody to take up my note; I said that you had done took all the money you can get, and I can get the note taken up when I get the house repaired; I have three different men that will take up the note after I get it repaired, and he said he could take the money, he could do anything he wanted to do.

"Q. Did you ever go back to him after that? A. Yes Sir.

"Q. Who was with you when that statement was made? A. Mr. S. Topletz was there at my house, and Mr. Levi made that statement, and there was two other men in the office with him.

"Q. Did you go back at any time and reach any kind of an agreement about repairing it? A. No sir, he didn't try to reach any kind of an agreement; I asked him if he would let me have $1200.00 to repair the house, and he said he wouldn't unless I would agree to let Saffir repair the house and that he would foreclose and take all the money and the house too.

"Q. You had all these estimates made on the second fire? A. Yes.

"Q. Pending adjustment of the fire loss, —or between the adjustment of the fire loss and the executing of these papers, did you have any conversation with him about signing these drafts? A. I wouldn't go down and sign the drafts then; I went down to Judge King Williamson's office, and the Judge said, 'Phone and ask him if he is going to let you have the money to repair the house;' if he would let me have the money if I would sign the draft, and I did phone and he said, 'Yes, come on and sign the draft,' and he would let me take $1200.-00 to repair the house, and I went up there and signed the draft, and he told me then to come back in two weeks, and when I went back in two weeks then he told me his father was not going to carry the note any longer. * * *

"Q. Why did you sign these drafts? A. He told me if I would sign them he would let me have the $1200.00 to replace the building; then after I signed them he told me to come back in two weeks, then he said he was not going to let me have it and was going to foreclose, his father was not going to carry the note any longer.

"Q. Did you get the $1200.00—what was he to do with the balance of the money? A. He was to apply that on the note.

"Q. Both notes? A. Yes sir."

S. Topletz then obtained possession of the property through trustee's sale and sequestration proceedings, substantially as alleged by plaintiff. L. Topletz had supervised the collection of the property rents from 1927 to the fall of 1932, and plaintiff testified that defendants were at all times, previous to the second fire, satisfied with the arrangement whereby the rents were to apply on and liquidate the loans; that no demand for payment in full of either note was made until after defendants had collected the insurance; and several witnesses said that around $1,200 would reconstruct the burned improvements. An aggregate of $20,410.43 had been paid on the debt and interest prior to May 30, 1935. It will be noted that in June, 1932, when the first fire loss was adjusted and the property restored, the $8,500 note was then past due, the three-year extension thereon not being executed until long afterward.

Plaintiff contends that her evidence in chief presented jury questions of whether in view of the course of dealing between the parties, the acceptance of a partial payment after May 24, 1935, and a demand for further small payments, constituted a waiver of the strict provisions of the note regarding payment in full and right of foreclosure; and of estoppel, under the alleged agreement to repair the building for $1,200, apply the balance of

the insurance money on the notes, and then permit plaintiff to take up or rearrange the entire debt. The directed verdict here came at the close of plaintiff's case and admitted the truth of the evidence in support of her cause of action. In this situation, we must indulge in every legitimate conclusion favorable to the appealing party and warranted by the facts proved; likewise, the record and all inferences properly drawn therefrom are to be construed by the courts against such peremptory instruction. 41 Tex.Jur. Trial (civil) Sec. 180, p. 955; City of Panhandle v. Byrd, Tex.Civ.App., 77 S.W.2d 904.

■■ In view of our conclusion that a reversal should follow this appeal, it would be improper to comment on the evidence under review except to say that, in our opinion, jury questions were raised both as to waiver and estoppel. Though the notes on their face were obviously past due, the first as to maturity and the second in the installment payments as stipulated, yet considering the history of the loans, the theretofore consistent course of dealing between the parties relative to liquidation thereof from rents, the acts and conduct of S. Topletz prior to May 30, 1935, involved, we think, fact questions of waiver of the strict provision of the note as to payment in full on its due date, and similar provisions of the deed of trust as to foreclosure. Also this agreement, alleged and testified to by plaintiff, raised appropriate issues involving estoppel to declare the debts due with consequent penalties, pending the performance of such promise, assuming its existence. Whether appellees have properly applied the insurance money after the second fire, under the well settled principles of Naquin et al. v. Tex. Sav. & Real Est. Inv. Ass'n, 95 Tex. 313, 67 S.W. 85, 58 L. R.A. 711, 93 Am.St.Rep. 855, becomes a matter of law after above fact issues are determined.

■■ Appellees argue that the notes were by their terms past due, hence in law they had the right to apply the insurance proceeds on the matured loans as they did; also contending that the facts, considered most favorable to plaintiff, evidenced only an attempt to extend the time of payment by parol, prohibited by Art. 5522, R.S.; and the attempted extension of past due notes by an alleged agreement to pay same out of future rents was too indefinite, and contrary to the Statute of Frauds. The instant facts we think do not involve an ex-

tension of matured debts by parol, but only a waiver of the right on May 30, 1935, to demand payment in full of the notes and foreclosure under the strict provisions. thereof and of the deeds of trust, which alleged defense required no special consideration in support. John Hancock Mut. Life Ins. Co. v. Howard et al., Tex.Civ. App., 85 S.W.2d 986; Manes et al. v. Bletsch, Tex.Civ.App., 239 S.W. 307 (Syl. 3); Cofer et al. v. Beverly, Tex.Civ.App., 184 S.W. 608, 609; and plaintiff's allegations and evidence, tending to show an agreement whereby she endorsed the drafts on assurance that only $1,200 out of the insurance money would be expended to repair the premises, whereupon she could obtain a loan to repay Topletz and Saffir, raise issues of equitable estoppel. This claimed agreement was plainly based upon sufficient consideration if found by the jury to exist; nor was it within the purview of the above statute requiring lien note extensions to be written, or the provisions of Art. 3995 (Statute of Frauds). See generally the following authorities and cases on the law questions here discussed. Jones on Mortgages, Vol. 2, 6th Ed., Sec. 1189–1191; 41 C.J. p. 861, Sec. 1054; Diamond et al. v. Hodges, Tex.Civ. App., 58 S.W.2d 187; Ward v. Scarborough et al., Tex.Com.App., 236 S.W. 434; Toplitz v. Bauer, 161 N.Y. 325, 55 N.E. 1059; Arnot v. Union Salt Co., 186 N.Y. 501, 79 N.E. 719; Blackman v. Carey, 192 Iowa 548, 185 N.W. 87.

■ Appellees strenuously argue in support of the court's peremptory instruction, of an entire lack of proof corresponding to plaintiff's allegations that on July 11, 1935, she endorsed the insurance drafts. on the promise of defendants to repair the property at a cost of $1,200, and apply the balance on the notes. While it is true, the above quoted testimony of Susie Woods discloses a somewhat different promise, i. e., one in which she would receive the stipulated amount and make the full repairs, whereupon, she endorsed the drafts, yet the pleading and the evidence taken together clearly raise the material issue of, whether the parties agreed to the expenditure of not more than $1,200 to fully repair the property, on which she acted, as she testified, to her prejudice. Defendants further contend the agreement just mentioned was between plaintiff and Levi Topletz, without any proof of authority in the latter to bind the defendants. The young-

er man (styled J. Topletz in plaintiff's pleading) was alleged to be the agent and attorney for S. Topletz and M. Saffir, and that all three were in a conspiracy to appropriate the whole of the $4,195.01 to the payment of the notes and then place her in default. The connection of Levi (or J.) Topletz in the dealings between the plaintiff and defendants from the beginning, and as trustee in the instruments creating the liens; long a collector of the rents; acting in other transactions testified to in the record, wherein L. Topletz dealt with plaintiff for and on behalf of defendants, we think raise the issue of authority to make the agreement claimed; and, referring again to plaintiff's verbatim testimony, heretofore shown, the same reasonably charges Mr. S. Topletz with knowledge of plaintiff's refusal to let Saffir repair the house, as well as of her request to be paid $1,200 for such purpose. Where one with knowledge of, or with notice which would put him on inquiry as to the facts, accepts the benefits of an unauthorized transaction, he is deemed to ratify the same. 2 C.J.S., Agency, Sec. 49, Notes 12, 13, and authorities; and Levi Topletz was undeniably an agent, in some capacity, of the defendants in the transaction, though his authority to make the promise testified to by plaintiff, whereby she endorsed the drafts, is not shown. Even so, the principal, by accepting the benefit of the agent's act, adopts also the means by which he procured it, although he may have had no knowledge as to what those means were. American Nat. Bank of Austin v. Cruger et al., 91 Tex. 446, 44 S.W. 278; Allen et al. v. Garrison, 92 Tex. 546, 50 S.W. 335; Lockney State Bank v. Damron, Tex.Civ. App., 179 S.W. 552.

Reversed and remanded.

BOND, C. J., dissents.

On Rehearing.

YOUNG, Justice.

Appellees' amended motion for rehearing points out that J. and Levi Topletz are two individuals, both sons of Mr. S. Topletz. The opinion is corrected accordingly, and is to be considered as referring to young Levi Topletz, who was not a party to the suit. The son named as defendant (J. Topletz) did not participate in the transactions involved or in this litigation, except as substitute trustee under the deed of trust. After thorough examination, said motion is, in all respects, overruled.

Motion overruled.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

Considering the disclosures of the record, the judgment of the court below should be affirmed. The basis of this suit, according to plaintiff's petition, is the failure of the defendants S. Topletz and M. Saffir to repair the buildings on property, damaged as the result of a fire occurring May 30, 1935, out of the proceeds of fire insurance carried on the property.

Plaintiff alleged that S. Topletz and M. Saffir agreed to repair the buildings in accordance with the agreement and understanding of the parties. She alleged that "during the month of June, 1935, she called at the office of the said S. Topletz and M. Saffir, and stated to them that it would cost Twelve Hundred ($1200.00) Dollars to put the buildings back in repair, but that the said S. Topletz and M. Saffir declined to *let her make the repairs* but stated to her that *they desired* to collect the insurance and repair the buildings themselves, after the proper adjustment of loss was made. Petitioner (Susie Woods) *declined* to allow the said S. Topletz and M. Saffir to make said repairs, but stated *she desired* to make the repairs herself." (Italics mine.) Plaintiff does not in any manner allege that defendants agreed to advance to her $1200 with which to repair the burned buildings, and there is no testimony conveying the idea that M. Saffir and S. Topletz, the holders of the notes, agreed to do so. The testimony is in line with the above pleadings.

Plaintiff testified that Saffir and Topletz offered to repair the buildings after the fire and she declined to accept their offer, but insisted that they deliver to her $1200 in cash, "as she desired to make the repairs herself". She further testified that Levi Topletz (a son of S. Topletz and bookkeeper in the office of Saffir and Topletz) told her: "If I would sign them (drafts), he would let me have the $1200.00 to replace the building; then after I signed them he told me to come back in two weeks, then he said he was not going to let me have it and was going to foreclose, his father (S. Topletz) was not going to carry the note any longer." If the agreement of Levi Topletz to advance the $1200

under the related circumstances was a controlling factor in this case, which, evidently it is not, such was not binding on M. Saffir and S. Topletz. They made no such agreement, and there is neither pleadings nor proof that Levi Topletz was empowered to bind the holders of the notes, who were the legal owners of the drafts, on promise to let her have $1200 of the insurance money. Furthermore, no consideration whatever passed for such undertaking. It was plaintiff's legal contracted duty to sign the drafts, thus putting the mortgagees in possession of their property. She did only that which the law requires her to do, in furtherance of her contract.

The record in this case shows that on May 24, 1927, the plaintiff Susie Woods, a negro woman, borrowed $14,000 for the purpose of constructing an apartment on the property in controversy; and, simultaneously therewith, executed a note in the sum of $8,500 to S. Topletz, secured by a first lien deed of trust on the property in question, and to M. Saffir a note for the sum of $5,872.62, secured by a second lien deed of trust, secondary only to the above note and lien of S. Topletz. The Topletz note was due and payable five years after its date, and, by an extension agreement, the due date extended for three years; and the Saffir note was due and payable to the tenor following: "$150.00, plus interest from March 15th, 1927, shall be due and payable June 1st, 1927; and, thereafter, the maker hereof shall deposit with the holder hereof monthly, for six consecutive months, the sum of $178.77, and thereafter monthly the sum of $150.00, said deposits to be made on the first day of each calendar month, beginning with the first day of July, 1927, out of which payments the holder hereof shall pay, first, the interest as it accrues on one note of even date herewith for $8,500.00, executed by me and payable to the order of S. Topletz five years after date and set out and described in deed of trust of even date herewith to L. Topletz, Trustee, upon the above described property; second, to the interest as it shall accrue on this note; third, the balance to be applied to the payment of the principal of this note."

Each of the above mentioned notes makes express provision for acceleration of maturity, at the option of the holders thereof, on default in the punctual payment of the indebtedness or interest; the Saffir note further providing that "failure to make the monthly deposits as hereinafter provided, shall, at the option of the holder hereof, mature the entire indebtedness secured by the hereinafter mentioned lien". The two deeds of trust simultaneously executed with the aforesaid notes make the usual provisions to include payment of taxes, insurance against fires loss payable to the holder of the indebtedness, and to keep said improvements in good condition and repair.

The insurance policies were issued to the insured, with loss payable to the lien holders, as their interest in the property might appear.

On May 7, 1932, a fire occurred, damaging the building, for which the insurance company paid the sum of $3,704.81; and, Susie Woods, the owner, then being in arrears in payment of the aforesaid notes and other obligations—installments, interest, taxes, and insurance—authorized payment of the insurance money to M. Saffir to repair the fire damage and to secure the renewal and extension of the S. Topletz note of $8,500 to May 24, 1935.

On May 30, 1935, six days after the maturity of the Topletz note, the owner again being in arrears in the payment of the installments on interest and principal of said notes, a second fire occurred; whereupon, both Topletz and Saffir declared their notes due according to their terms and conditions; and Topletz, exercising the option and power of sale conferred by his deed of trust, posted notices of sale and sold the property in accordance therewith.

Appellant bases her right of recovery upon three propositions: (1) That the debt was not due; (2) that S. Topletz told her she could pay the debt out of rents collected by her from the property; and (3) that she endorsed the insurance drafts because Topletz agreed to let her have $1200 of the insurance money with which to repair the improvements, so as to obtain a loan to pay the Topletz and Saffir notes.

The evidence shows without controversy, that the notes were past due: The Topletz note became due May 24, 1935; and the Saffir note was payable in installments at specific dates and amounts, which were not paid. There was no written or verbal agreement either pleaded or proven, to extend the maturity dates beyond the expressed terms of the notes. At the time of the fire, May 30, 1935, both notes being

past due, the entire amount of the insurance loss was payable to the holders of the notes. They were the owners of the drafts given in payment of the insurance loss; and, under all of the authorities, Saffir and Topletz had the right to apply the insurance to the payment of their indebtedness, and enforce collection for the balance.

In Panhandle Nat. Bank v. Security Co. et al., 18 Tex.Civ.App. 96, 44 S.W. 15, 20, the Security Company sued the Delaware Insurance Company and the Pan Handle National Bank and the Wichita Falls Milling Company, alleging it held a lien upon certain real property; the insurance had been effected on the property with loss clause payable to it; and the bank had fraudulently obtained the policies and had the loss clauses changed in favor of the bank. There was a fire and the bank collected the money. Judgment was against the bank. The court said: "As the petition shows that the plaintiff held a mortgage on the property for an amount in excess of the policies sued on, and does not show that the mortgage debt had been paid or the property released, we think it shows such an interest in the property as will entitle the plaintiff to sue for and collect the entire amount of the policies in controversy". See, also, Walter Connally & Co. v. Hopkins et al., Tex.Civ. App., 195 S.W. 656, 659, affirmed Tex. Com.App., 221 S.W. 1082, holding: " 'An agreement * * * between the mortgagor and mortgagee, by which the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, will charge the proceeds of any insurance taken out by the mortgagor with a lien in favor of the mortgagee.' And in the Wheeler Case [Wheeler v. Ins. Co., 101 U.S. 439, 25 L.Ed. 1056] the Supreme Court said: 'It is settled by many decisions in this country that if the mortgagor is bound, by covenant or otherwise, to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed.' " In Zeigler et al. v. Federal Land Bank of Houston et al., Tex.Civ.App., 86 S.W.2d 864, 867, Zeigler and wife executed notes to the Federal Land Bank, payable in installments and effected fire insurance with loss payable to the bank. The property was damaged by fire; the insurance was paid to the bank; Zeigler requested that the funds be applied to past due installments, to taxes, etc., thus leaving the principal not due. The bank refused to do this; and applied the money on the installments delinquent and the balance on the principal of the debt, and, then foreclosed under the terms of the deed of trust for the balance. The El Paso Court of Appeals, writ of error dismissed, held: "The funds paid over to the bank being the proceeds of a policy on the 150-acre tract, it became the duty, unless the owner of the land agreed otherwise, to apply them to the payment of the past-due installment and retain the balance to be applied upon the remaining indebtedness as it fell due. 26 C.J. § 589, p. 441; Thorp v. Croto et al., 79 Vt. 390, 65 A. 562, 10 L.R.A.,N.S., 1166, 118 Am. St.Rep. 961, 9 Ann.Cas. 58, and cases cited." So is the case at bar: The owner agreed for the insurance money to be paid to Saffir and Topletz, the holders of the notes as their interest might appear, thus, after the fire, the notes being past due, she had no right to direct the application of the money, other than to the payment of the notes.

It is an untenable conclusion that Topletz waived his right to enforce the terms and conditions of his note and deed of trust, because, forsooth, of failure on the part of the maker, Susie Woods, to meet the payments on the Saffir note, and Saffir's failure to exercise his option to declare his debt due and enforce his lien prior to the fire; and, that Saffir waived his rights by deferring payment and foreclosure. It is not contended that either agreed to any extension of their notes; the notes were due, and each had a right to exercise the rights extended to them in the transactions. The record does not reflect that the holders of the notes said or did anything to lull the obligor, Susie Woods, into security, to her hurt and damage or waive or estop them in the exercise of their rights under their contracts to cause the intervention of a plea in equity. The principles of law abound in this case.

The judgment of the court below should be affirmed; accordingly, I respectfully enter my dissent.